**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Asheville Division**

| | |
|---|---|
| CHARLOTTE HUMBLE, SHARON ISACKSON, JUSTIN HUMBLE, TREVOR SIMMONS, MARGARET HOOVER, BELINDA KING AND JENNIFER SPAYTH BROWNING, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br>v.<br><br>HARRAH'S NC CASINO COMPANY, LLC, d/b/a Harrah's, Harrah's Cherokee Valley River Casino, and Harrah's Cherokee Casino Resort,<br><br>              Defendants. | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE AND CLASS ACTION COMPLAINT FOR MONETARY DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs Charlotte Humble, Sharon Isackson, Justin Humble, Margaret Hoover, Trevor Simmons, BeLinda King and Jennifer Spayth Browning, on behalf of themselves ("Plaintiffs"), and on behalf of various classes of similarly situated individuals, hereby file this Complaint against their current or former employer Harrah's NC Casino Company, LLC d/b/a Harrah's Cherokee Valley River Casino ("Valley River Casino") and Harrah's Cherokee Casino Resort ("Cherokee Resort Casino") (collectively "Defendant" or "Harrah's") to seek redress for Harrah's long-standing abuse of federal and state wage and hour laws. This action is brought pursuant to the Fair Labor Standards Act ("FLSA") of 1938, 29 U.S.C. §§ 201 *et seq.*, the North Carolina Wage Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 *et seq.*, and North Carolina common law. In support thereof, Plaintiffs state as follows:

# I. NATURE OF LAWSUIT

1.     This civil action seeks monetary damages and other equitable and ancillary relief for Harrah's illegal and willful scheme of forcing employees to perform unpaid work in violation of the FLSA, the NCWHA, and North Carolina common law.

2.     Plaintiffs Charlotte Humble, Sharon Isackson, Justin Humble, Margaret Hoover and Trevor Simmons worked as table games dealers at the Valley River and Cherokee Resort casinos (collectively "Table Games Operators"). Until recently, Harrah's had a common policy requiring Table Games Operators, including dual-rate dealers, to arrive at work approximately thirty-seven (37) minutes before the start of their scheduled shift, sign-in and clock-in as on duty, and then begin working without ever receiving compensation for the work time before their scheduled shift started (hereinafter referred to as the "Early Arrival Policy"). Upon information and belief, Harrah's required all of its non-exempt employees to follow the Early Arrival Policy. Similarly, Harrah's required all of its employees to attend quarterly rally meetings without pay. These policies or practices were illegal, violating federal and state wage laws and North Carolina common law. Thus, Plaintiffs, and similarly situated employees, are entitled to compensation for this unpaid, compensable work under the FLSA, the NCWHA, and North Carolina common law.

3.     Likewise, as part of a different common policy or practice, Harrah's misclassified its supervisors of Table Games Operators, including dual-rate supervisors ("Table Games Supervisors"), as exempt employees before reclassifying the positions as non-exempt. Table Games Supervisors were subject to the Early Arrival Policy, were required to attend quarterly rally meetings without pay, and on occasions, were required work an extra day during the week without receiving any pay for that extra day of work. This policy or practice was also illegal, violating federal and state wage laws in addition to North Carolina common law. As a result,

2

Plaintiffs BeLinda King and Jennifer Spayth Browning, and similarly situated Harrah's employees working as Table Games Supervisors, are entitled to compensation for their unpaid work under the FLSA, the NCWHA, and North Carolina common law.

4.      Moreover, for Plaintiffs and similarly situated employees, some or all of their uncompensated time resulted in them working in excess of forty (40) hours per week. But, in addition to failing to pay Plaintiffs and similarly situated employees at their regular rate of pay, Harrah's did not pay them overtime wages for their uncompensated work. Plaintiffs now file suit to recover their damages arising from Harrah's illegal pay practices.

## II.  PARTIES

5.      Plaintiffs are the above-named individuals and those individuals who in the future file consent forms with the Court and/or those individuals included within the Common Law Class definition as set forth below.

6.      Plaintiff Charlotte Humble is a resident of North Carolina. She began working for Harrah's on September 17, 2015 at the Valley River Casino as a non-exempt employee. At all relevant times, she worked as a Table Games Operator and was an employee as defined under 29 U.S.C. §203(e)(1) and as defined under N.C. Gen Stat. § 95-25.2(4). She has signed a consent form to opt in to this collective action, a copy of which is attached as Exhibit A.

7.      Plaintiff Sharon Isackson is a resident of North Carolina. During the past three years, she first worked for Harrah's at the Cherokee Resort Casino as a non-exempt employee. She then transferred to the Valley River Casino in September 2015 and is currently a non-exempt employee at that location. At all relevant times, she worked as a Table Games Operator and was an employee as defined under 29 U.S.C. §203(e)(1) and as defined under N.C. Gen Stat. § 95-25.2(4). She has signed a consent form to opt in to this collective action, a copy of which is

attached as Exhibit A.

8. Plaintiff Justin Humble is a resident of North Carolina. He began working for Harrah's on November 2, 2015 at the Valley River Casino as a non-exempt employee and continues working in that same capacity today. At all relevant times, he worked as a Table Games Operator and was an employee as defined under 29 U.S.C. §203(e)(1) and as defined under N.C. Gen Stat. § 95-25.2(4). He has signed a consent form to opt in to this collective action, a copy of which is attached as Exhibit A.

9. Plaintiff Margaret Hoover is a resident of North Carolina. She began working for Harrah's in 2015 as a non-exempt employee at the Valley River Casino and continues working in that capacity today. At all relevant times, she worked as a Table Games Operator and was an employee as defined under 29 U.S.C. §203(e)(1) and as defined under N.C. Gen Stat. § 95-25.2(4). She has signed a consent form to opt in to this collective action, a copy of which is attached as Exhibit A.

10. Plaintiff Trevor Simmons is a resident of New York. He worked for Harrah's as a non-exempt employee at the Valley River Casino within the last three years. At all relevant times, he worked as a Table Games Operator and was an employee as defined under 29 U.S.C. §203(e)(1) and as defined under N.C. Gen Stat. § 95-25.2(4). He has signed a consent form to opt in to this collective action, a copy of which is attached as Exhibit A.

11. Plaintiff BeLinda King is a resident of New York. She worked for Harrah's as a misclassified exempt employee at the Valley River Casino within the last three years. At all relevant times, she worked as a Table Games Supervisor and was an employee as defined under 29 U.S.C. §203(e)(1) and as defined under N.C. Gen Stat. § 95-25.2(4). She has signed a consent form to opt in to this collective action, a copy of which is attached as Exhibit A.

4

12.     Plaintiff Jennifer Spayth Browning is a resident of New York. She worked for Harrah's as a misclassified exempt employee at the Valley River Casino within the last three years.  At all relevant times, she worked as a Table Games Supervisor and was an employee as defined under 29 U.S.C. §203(e)(1) and as defined under N.C. Gen Stat. § 95-25.2(4).  She has signed a consent form to opt-in to this collective action, a copy of which is attached as Exhibit A.

13.     Defendant Harrah's NC Casino Company, LLC is a North Carolina Corporation and, upon information and belief, is the largest employer in Western North Carolina. It may be served via its registered agent, Corporation Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

14.     Harrah's is an "employer" within the meaning of 29 U.S.C. § 203(d) and N.C. Gen Stat. § 95-25.2(5), and/or a horizontal and/or vertical joint employer within the meaning of 29 C.F.R. § 791.2(a). Harrah's is also an "enterprise" within the meaning of 29 U.S.C. §§ 203(r), (s) and N.C. Gen Stat. § 95-25.2(18) because, inter alia, it engages in commerce, including but not limited to, operating a casino frequented by patrons from various states, with an annual revenue in excess of $500,000.00.

### III.  JURISDICTION AND VENUE

15.     Subject matter jurisdiction for the claims asserted in this case rests exclusively in federal or state courts. This matter involves allegations of unpaid wages involving individuals and companies who are domiciled within the sovereignty of the United States.

16.     This Court has subject matter jurisdiction pursuant to § 16(b) of the FLSA (29 U.S.C. § 216(b)) and the provisions of 28 U.S.C. §§ 1331, 1337, and 1367.

17.     Venue lies in the United States District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1391 because Plaintiffs are or were employed by Harrah's in

this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

## IV.  COMMON FACTUAL ALLEGATIONS

18.     This class and collective action seeks to recover damages associated with Harrah's unlawful pay practices.

**A.      Harrah's Operates Its Casinos as One Entity.**

19.     The Cherokee Resort Casino opened in 1997. Almost 18 years later, in 2015, Harrah's opened the Valley River Casino. Since their respective openings, Harrah's has operated the Valley River Casino and Cherokee Resort Casino (collectively the "Harrah's Cherokee Casinos") continuously and as a single integrated enterprise.

20.     Harrah's advertises the Harrah's Cherokee Casinos as "two great properties, one big family." The Harrah's Cherokee Casinos hold combined job fairs and list open employment positions on the same website. And prospective employees interested in working at either casino are directed to call the same telephone number to inquire about employment.

21.     Once hired, Harrah's uses the same employee handbook for employees at both casinos. Regardless of the specific casino at which they work, Plaintiffs, and other similarly situated employees, access the same employee portal/intranet, which is used to communicate critical work information to employees at either Harrah's Cherokee Casino.

22.     In fact, when the Valley River Casino opened in September 2015, Harrah's had Cherokee Resort Casino employees working at the Valley River Casino as dealers. Even now, Harrah's allows Plaintiffs, and similarly situated employees, to work at either casino. Employees do not need to reapply for employment to transfer from one casino to the other. Transferring employees keep their seniority for purposes of PTO calculations and other employment benefits. These employees also retain the same Harrah's employee number.

6

**B.** **Harrah's Employs Plaintiffs, and Similarly Situated Employees, at the Harrah's Cherokee Casinos.**

23.　Harrah's employs Plaintiffs, and similarly situated employees, to perform various jobs as part of the Harrah's Cherokee Casinos' operation.

24.　Harrah's hires Plaintiffs, and similarly situated employees, and then trains them extensively (including, upon information and belief, providing them with OSHA training, responsible gaming training, and Skill Soft computer program training).

25.　Harrah's outfits its employees, like Plaintiffs, and those similarly situated, with color-coded uniforms bearing the Harrah's logo. The colors correspond with the employees' general job position (i.e., servers, dealers, security). Harrah's sets employees' work schedules, posting them on the Harrah's employee portal/intranet. Harrah's also tracks its employees' attendance, managing the sign-in and log-in processes. In addition, Harrah's supervises its employees' work and performs employee reviews, including making determinations about compensation adjustments.

26.　Harrah's is involved in hiring and firing employees or modifying the terms or conditions of their employment, including reinstating them, providing them reimbursement for lost wages, and administering disciplinary action. Harrah's also directs, controls, or supervises employees, like Plaintiffs and those similarly situated, even issuing "Errors In Procedures" to employees as part of the disciplinary process.

27.　Harrah's has responsibility over functions ordinarily carried out by an employer, such as handling payroll records; securing and providing workers' compensation insurance; and providing the equipment, tools, or materials necessary to complete the work.

28. Utilizing its extensive history and experience operating casinos, Harrah's provides its Cherokee Casinos employees with detailed policies, practices, and procedures that govern each aspect of the work performed by Plaintiffs, and those similarly situated.

29. Plaintiffs, and similarly situated employees, must follow the terms of Harrah's employment handbook ("Harrah's Handbook"), which happens to provide the same conditions of employment for Harrah's Cherokee Casinos employees as Harrah's parent company provides to employees at its casinos operating in other states. These conditions include, but are not limited to:

    a.    The same employee assistance program available to employees of other casinos under the Harrah's brand;

    b.    Access to the same company store as those employees;

    c.    The same hotel room discounts as those employees;

    d.    Upon information and belief, the same paid time off schedule as those employees;

    e.    Upon information and belief, the same leaves of absence including bereavement leave, jury duty leave, military leave, personal leave of absence, and FMLA leave as those employees;

    f.    Opportunities to transfer to other casinos as those employees;

    g.    The same employee hotline as those employees; and

    h.    Access to the same individual recognition and rewards, including the $1,000 Chairman's Award which was established in 1987 (before the casinos opened).

30. In light of each of the above-listed factors, Harrah's unquestionably employs Plaintiffs and similarly situated Harrah's employees.

8

**C.**      **Harrah's Required Plaintiffs to Perform Unpaid Work.**

31.      Harrah's freely acknowledges its obligation to pay employees for their time

working. In fact, the Harrah's Handbook states:

> The following are considered hours worked and the employee must be paid. If
> this work exceeds a regularly scheduled 40-hour week, overtime pay will be
> calculated:
>
> • Work performed at home as approved by department manager
>
> • Attending mandatory meetings and training sessions (excluding pre-
> employment training or training attended by choice to prepare for
> another job, e.g. Dealer school, Exploring Supervisory Opportunities)
>
> • Reconciling cash drawers at the end of a shift
>
> • Breaks
>
> • Serving as an elected participant on a Board of Review[.]

The Handbook further states, "overtime rates will apply for all hours in excess of forty (40) per

week." Yet, Harrah's failed to follow any of these written policies.

32.      Harrah's had a common policy, procedure, and/or requirement for its employees,

like the Table Games Operator Plaintiffs and similarly situated employees, to clock in before the

start of their scheduled shift. In most instances, Plaintiffs, and similarly situated employees,

arrived around thirty-seven (37) minutes before their shift started because the policy focused on

ensuring individuals were present, ready, willing and able to work 30 minutes before the start of

their scheduled shift. Under this Early Attendance Policy, Plaintiffs would sign in after walking

past the security desk. A Harrah's employee seated at the sign-in area would clock-in (i.e., log)

Plaintiffs into the attendance system. In fact, the Harrah's Handbook requires Plaintiffs and

similarly situated employees to clock in "immediately before starting work."

33.      Upon information and belief, while the time system tracked the employees' actual

hours worked, Harrah's paid employees pursuant to their scheduled work shift time only.

9

34.     After signing and clocking into work, Harrah's required its employees, like Plaintiffs and similarly situated employees, to attend mandatory pre-shift meetings, often referred to as "Buzz Sessions," or perform other work-related tasks, such as donning and doffing uniforms, training on table games and preparing to work the tables. The Buzz Sessions and other pre-shift work were integral and indispensable to each employee's principal work activities.

35.     Similarly, although the Table Games Supervisors were not required to clock in, they were required to arrive at work before the start of their scheduled shift and perform work similar to other employees.

36.     Plaintiffs, and similarly situated employees, had no option other than performing the compensable, pre-shift work without receiving pay. If any employee failed to attend mandatory meetings (such as a pre-shift Buzz Session) or arrived later than required under the Early Attendance Policy, that employee would accumulate points against their attendance record. Based on the number of points, Harrah's employees were subject to discipline up to and including termination.

37.     At all times after logging into Harrah's attendance system, Plaintiffs and similarly situated employees were on-duty, engaged to perform their jobs and subject to Harrah's direction and control. Yet, Harrah's never paid its employees for their pre-shift work contrary to Harrah's own policies and federal and state law. Harrah's compensated Plaintiffs and other similarly situated employees only for their scheduled work shift (less any time off an employee may have taken), irrespective of when employees actually arrived and started working.

38.     Although Harrah's failed to compensate for its pre-shift work, its handbook clearly requires pay for attending Buzz Sessions and attendant pre-shift work. The Harrah's Handbook states, in relevant parts, that:

*Pay for Buzz Session/Uniform Changes*

Employees should clock in before acquiring keys, radios, wallets, etc. They should also be paid for buzz sessions. Employees who must change into uniforms on property should clock in before changing.

The Handbook further states, "non-exempt employees required to attend scheduled meetings will be paid at their primary rate of pay for the actual length of the meeting." Yet, Harrah's failed to follow any of these written policies.

39.     Indeed, besides its Early Attendance Policy, Harrah's required its Cherokee Casinos employees, including Plaintiffs, to attend quarterly rally meetings without pay. Rally meetings lasted two to four hours on each occasion. Rally meetings were integral and indispensable to each employee's principal work activities and these meetings occurred when employees, including Plaintiffs, were on-duty and engaged to work. If a Harrah's Cherokee Casino employee failed to attend a rally meeting, Harrah's would "write up" that employee and s/he would be subject to discipline. The failure to pay employees for attending quarterly rally meetings violated Harrah's own policies and federal and state wage laws.

40.     Moreover, on occasions, Harrah's required its Table Games Supervisors, like Plaintiffs King and Browning, to work an extra day—six, rather than five days—per week without paying them any additional compensation for working that extra day. In other words, Table Games Supervisors received a salary contingent upon a five-day workweek, but Harrah's required them to work six days per week on occasions. Upon information and belief, Harrah's did not pay the Table Games Supervisors for the extra day because Harrah's misclassified these employees as exempt employees.

41.     Harrah's Table Games Supervisors are not exempt, however. They are not highly compensated employees insofar as they earn around $50,000 per year, such as Plaintiffs King and Browning. Table Games Supervisors neither manage the enterprise, regularly direct the work

11

of other full-time employees nor possess the authority to hire or fire other employees. Nor are the Table Games Supervisors' recommendations for hiring or terminating employees given significant weight, if any. Additionally, these employees do not perform work directly related to Harrah's management or general business operations and they lack discretion and independent judgment with respect to significant matters given the detailed handbook, instructions, and training they receive and must follow. Harrah's even requires the Table Games Supervisors to use PTO if they "left work early" because of a slow night—a requirement that would be unavailable to Harrah's if the Table Games Supervisors were truly exempt. As a result, the Table Games Supervisors have always been non-exempt employees as a matter of fact and law. Upon information and belief, Harrah's presently classifies its Table Games Supervisors as non-exempt employees.

42.     Paychecks issued to Plaintiffs and similarly situated employees compensate each employee for a maximum of forty (40) hours per week, regardless whether the employee worked in excess of forty (40) hours in a week. Harrah's regularly required employees to work more than 40 hours per week, when including daily pre-shift work for which Harrah's did not compensate Plaintiffs or similarly situated employees. Similarly, Harrah's required employees to spend approximately a full workday or two worth of time each year attending unpaid rally meetings. And Harrah's refused to pay its Table Games Supervisors for a full day of work from time-to-time when they worked six days instead of their scheduled five day week. As a result of these pay failures, Harrah's failed to pay straight time, overtime wages, and other benefits to Plaintiffs when they worked in excess of forty (40) hours per week.

43.     The approximate sums due each Plaintiff or similarly situated employee are not yet known. Information as to the amounts due is within the exclusive custody and control of

Harrah's. Harrah's is required by law to monitor and maintain the hours worked by Plaintiffs and similarly situated employees for which they are compensated (as reflected on the paychecks they receive every two weeks).

## V. COLLECTIVE ACTION ALLEGATIONS

44.     The allegations set forth in foregoing paragraphs are incorporated herein by reference.

45.     All Plaintiffs identified hereunder as employees pursuant to 29 U.S.C. § 203(e)(1) (also referred to herein as the "FLSA Plaintiffs") bring Count I through III (for FLSA violations) as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of the following similarly situated class of persons (hereinafter, the "FLSA Class"):

> All individuals who worked as nonexempt employees (including dual rate
> employees), or Table Game Supervisors misclassified as exempt employees, at
> the Harrah's Cherokee Valley River Casino or Harrah's Cherokee Casino
> Resort at any time within the last three years who: (a) attended rally meetings
> without pay (including overtime wages) and (b) arrived at work before their
> scheduled shift and may have signed-in but who were not paid (including
> overtime wages) for the time between their arrival or signing into the system as
> present and the start of the scheduled shift despite performing work and/or
> being engaged to perform work.

Plaintiffs are adequate class representatives for the aforementioned putative class. The FLSA Plaintiffs also seek subclasses.

46.     The first subclass consists of those Table Games Operators who satisfy the definition of paragraph 45 above (collectively the "Table Games Operators Subclass"). Plaintiffs

13

Charlotte Humble, Sharon Isackson, Justin Humble, Margaret Hoover and Trevor Simmons are adequate class representatives for this putative subclass (collectively the "Operator Plaintiffs").

47.     The second subclass consists of those Table Game Supervisors, within the past three years, who worked six days in any given week and/or over forty (40) hours in a given week without any adjustment in their compensation to account for the additional work time. Plaintiffs BeLinda King and Jennifer Spayth Browning are adequate class representatives for this putative subclass ("Supervisors Plaintiffs").

48.     The FLSA Plaintiffs may seek additional subclasses as may be determined as necessary based on material differences, if any, with corresponding limitations on rights under the FLSA. The FLSA Class together with the various subclasses are referred herein as the FLSA Classes or FLSA claims.

49.     The FLSA claims may be pursued by those who opt in to this case, pursuant to 29 U.S.C. § 216(b). The number and identity of other plaintiffs yet to opt in and consent to be party plaintiffs may be determined from Harrah's' records. These putative class members may easily and quickly be notified of the pendency of this action.

50.     The FLSA claims have been brought and may be properly maintained as a collective action under 29 U.S.C. § 216(b) because there is a well-defined community of interest in the litigation and the proposed FLSA Class is easily ascertainable by examination of the employment records that Harrah's is required to maintain by law, including but not limited to, employee time clock reports, payroll records and policy directives.

51.     While the exact number of potential opt-in plaintiffs is unknown to the FLSA Plaintiffs at the present, based on information and belief, there are more than 500 members of the class and/or subclasses. Thus, a collective action is the most efficient mechanism for

resolution of the claims. To the extent required by law, notice will be provided to the prospective collective action members via First Class Mail and/or by use of techniques in a form of notice that has been used customarily in collective actions, subject to Court approval.

52.    A claim for relief for violations under the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because the FLSA Plaintiffs' claims are similarly situated to the FLSA claims of the putative members of this Collective Action. They have substantially similar job requirements, pay provisions, and are subject to the same or similar policies and practices.

53.    The FLSA Plaintiffs seek relief on a collective basis challenging Harrah's policies and/or practices of knowingly and willfully failing to pay employees compensation due for performing pre-shift work, including attending mandatory "Buzz sessions," and for attending rally meetings without pay. Indeed, the FLSA Plaintiffs and members of the FLSA Classes were subject to common practices, policies, procedures, edicts, and/or plans—all of which required or permitted the FLSA Plaintiffs and members of the FLSA Classes to perform work for the benefit of Harrah's without receiving compensation from Harrah's for that work—including, but not limited to:

      a.    Harrah's knowingly and systemically failing and refusing to compensate the FLSA Plaintiffs and members of the FLSA Classes for approximately thirty-seven (37) minutes of pre-shift work per day;

      b.    Harrah's knowingly and systemically failing and refusing to compensate the FLSA Plaintiffs and members of the FLSA Classes for time spent attending quarterly rally meetings;

c.      Harrah's knowingly and systemically failing and refusing to compensate the Table Games Supervisors and members of that subclass for working in excess of 40 hours in a week and in excess of five-days in a given week; and

d.      Harrah's knowingly and systematically failing and refusing to compensate the FLSA Plaintiffs and members of the FLSA Classes overtime for hours worked in excess of forty (40) each week.

54.     The FLSA Plaintiffs' and the FLSA Classes members' performance of the tasks listed in the above Paragraphs constitutes an integral and indispensable part of the principal activities for which they are or were employed and is therefore itself a principal activity and compensable under the FLSA.

55.     The FLSA Plaintiffs and members of the FLSA Classes were not compensated for the work described in the above Paragraphs, which is performed for Harrah's benefit.

56.     Harrah's policies, practices, and procedures underlying the allegations contained herein were applied uniformly across both casinos. The FLSA Plaintiffs and members of the FLSA Classes will fairly and adequately represent and protect the interests of the members of the collective action. The FLSA Plaintiffs have retained counsel competent and experienced in the FLSA and employment law litigation.

## VI.   CLASS ACTION ALLEGATIONS

57.     The allegations set forth in foregoing paragraphs are incorporated herein by reference.

58.     Plaintiffs bring Counts IV through VI (for violations of North Carolina state and common law) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following class of persons (hereinafter, the "Common Law Classes"):

16

All individuals who worked as nonexempt employees (including dual rate employees), or Table Game Supervisors misclassified as exempt employees, at the Harrah's Cherokee Valley River Casino or Harrah's Cherokee Casino Resort at any time within the last three years who: (a) attended rally meetings without pay (including overtime wages) and (b) arrived at work before their scheduled shift and may have signed-in but who were not paid (including overtime wages) for the time between their arrival or signing into the system as present and the start of the scheduled shift despite performing work and/or being engaged to perform work.

Plaintiffs are adequate class representatives for this putative class ("Common Law Plaintiffs") and seek two subclasses.

59.     The first subclass consists of those Table Games Operators who satisfy the definition of Paragraph 58 above (collectively the "Common Law Operators Subclass"). The Operator Plaintiffs are adequate class representatives for this putative subclass.

60.     The second subclass consists of those Table Games Supervisors who, within the past three years, worked six days in any given week and/or over forty (40) hours in a given week without any increase in their compensation for working the additional day (collectively the "Common Law Supervisors Subclass"). The Supervisor Plaintiff is an adequate class representative for this putative subclass.

61.     There do not appear to be any difficulties in managing this class action and the identity of the members of the Common Law Classes, including members of the Common Law Supervisor Subclass, is easily ascertainable from Harrah's' records.

17

62. **Numerosity:** The members of the Common Law Classes, including members of the Common Law Supervisor Subclass, are so numerous that joinder of all members would be impractical, if not impossible. Plaintiffs are informed and believe that there are hundreds of class members who currently or formerly worked for Harrah's at the Valley River Casino and Cherokee Resort Casino, and who have had their rights violated by Harrah's' unlawful scheme.

63. **Commonality:** There are numerous questions of law and fact common to the Plaintiffs and members of the Common Law Classes, including members of the Common Law Supervisor Subclass, that they seek to represent and such questions predominate over any questions affecting only individual class members. These questions include, but are not limited to, the following:

      a.  Whether Plaintiffs and members of the Common Law Classes, including members of the Common Law Supervisor Subclass, were denied compensation for hours worked;

      b.  Whether the Harrah's' policies and practices described in this Complaint and any similar policies and procedures were in violation of state law, including their practice of failing to compensate employees for "Buzz Sessions" and other pre-shift work;

      c.  Whether Harrah's was unjustly enriched;

      d.  Whether Harrah's has engaged in a common course of failing to compensate members of the Common Law Classes, including members of the Common Law Supervisor Subclass, for all hours worked;

      e.  Whether Harrah's has engaged in a common course of failing to pay members of the Common Law Classes, including members of the Common Law

Supervisor Subclass, overtime for all hours in excess of forty (40) in each week; and

    f.   What relief is necessary and appropriate to remedy Harrah's' unlawful conduct.

64.    **Typicality**: The claims of the named Plaintiffs, as class representatives, are typical of the claims of all class members of the respective Common Law Classes, including members of the Common Law Supervisor Subclass, which they seek to represent. The illegal practices Harrah's relied on in denying compensation to Plaintiffs are the same practices used to deny compensation to members of the Common Law Classes, including members of the Common Law Supervisor Subclass. Plaintiffs will seek the same types of damages and other relief as the Common Law Class Members, including members of the Common Law Supervisor Subclass. Similarly, the Class Representatives' claims, like the claims of their respective classes, arise out of the same common course of conduct by Harrah's and are based on the same legal and remedial theories, including but not limited to:

    a.   Whether Harrah's' policies and practices described in this Complaint were, and are, in violation of state law, including their practice of failing to compensate employees for pre-shift work; and

    b.   Whether Harrah's was unjustly enriched.

65.    **Adequacy of Representation:** The Class Representatives will fairly and adequately represent and protect the interests of their respective classes and have the incentive and commitment to do so. The Class Representatives have retained competent and capable attorneys who are experienced trial lawyers with significant experience in complex and class litigation, including employment litigation. The Class Representatives and their counsel are

19

committed to prosecuting this action vigorously on behalf of the Common Law Classes, including the Common Law Supervisor Subclass. Neither the Class Representatives nor their counsel has interests that are contrary to or that conflict with those of the proposed Common Law Classes, including the Common Law Supervisor Subclass.

66.     Class certification of the Common Law Classes, including the Common Law Table Games Class, for Counts IV through VI is appropriate under Federal Rule 23(b)(3) because questions of law and fact common to class members predominate over any questions affecting only individual members. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

67.     Class certification of the Common Law Classes, including the Common Law Supervisor Subclass, for Counts IV through VI is appropriate under Federal Rule 23(b)(3) because the class action mechanism is superior to any alternatives that might exist for the fair and efficient adjudication of these claims. Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment is the only realistic means by which Plaintiffs can effectively litigate against large, well-represented entities like Harrah's. In the absence of a class action, Harrah's would be unjustly enriched because they would be able to retain the benefits and fruits of the many wrongful violations of numerous states' laws. Numerous repetitive individual actions would also place an enormous burden on the courts as they are forced to take duplicative evidence and decide the same issues relating to Harrah's conduct over and over again.

68.     Counts IV through VI, if certified under Federal Rule 23(b)(3) for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the foregoing Common Law Classes, including the Common Law Supervisor Subclass.

69.     Class certification of the Common Law Classes for Counts IV through VI is appropriate under Federal Rule 23(b)(2) because Harrah's has acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Common Law Classes, including the Common Law Supervisor Subclass, as a whole.

70.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(1)(A) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members.

### COUNT I – VIOLATIONS OF THE FLSA – FAILURE TO PAY WAGES (Collective Action Under 29 U.S.C. § 216(b) Unpaid Wages, Overtime, and Other Benefits)

71.     The allegations set forth in foregoing paragraphs are incorporated herein by reference.

72.     The FLSA Plaintiffs and members of the FLSA Classes bring this action against Harrah's because Harrah's willfully and without good faith violated the FLSA by engaging in a pattern and practice of unlawful conduct. In particular, Harrah's has refused to compensate the FLSA Plaintiffs and members of the FLSA Classes for daily pre-shift work. Harrah's unlawful conduct has been repeated and is consistent. Indeed, upon information and belief, Harrah's parent and sister companies have been sued for similar unlawful wage practices.

73.     The FLSA Plaintiffs and members of the FLSA Classes were and are employed by Harrah's and have been, and are, entitled to the rights, protections, and benefits provided under the FLSA.

74.     Harrah's is subject to the requirements of the FLSA.

75.     The FLSA requires that covered employers pay non-exempt employees at least a minimum wage of $7.25 per hour or their regular rate of pay for all hours worked and overtime at a rate of one and one half times the employee's regular rate of pay for hours worked over forty (40) in a workweek.

76.     Harrah's did not comply with either the minimum wage or the overtime requirement as they pertains to the unpid pre-shift work performed by the FLSA Plaintiffs and members of the FLSA Classes each day.

77.     As a pattern and practice, Harrah's regularly required the FLSA Plaintiffs and members of the FLSA Classes to perform pre-shift work each day without compensation. Harrah's was aware that Plaintiffs did not receive compensation.

78.     Harrah's knew or should have known that it suffers or permits the FLSA Plaintiffs and members of the FLSA Classes to perform daily pre-shift work which is for the benefit of Harrah's and is integral to their operations, without appropriate compensation. The conduct of Harrah's, as set forth above herein, has been willful, not in good faith, and has caused significant damages to the FLSA Plaintiffs and members of the FLSA Classes.

79.     The FLSA Plaintiffs and members of the FLSA Classes are entitled to damages under the FLSA for all uncompensated time worked within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Harrah's acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

22

80.     Harrah's has acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, the FLSA Plaintiffs and members of the FLSA Classes are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid compensation pursuant to 29 U.S.C. § 216(b).

81.     Alternatively, should the Court find that Harrah's did act with good faith and reasonable grounds in failing to compensate the FLSA Plaintiffs and members of the FLSA Classes, the FLSA Plaintiffs and members of the FLSA Classes are entitled to an award of pre-judgment interest at the applicable legal rate.

82.     As a result of the aforesaid willful violations of the FLSA, compensation has been unlawfully withheld by Harrah's from the FLSA Plaintiffs and members of the FLSA Classes. Accordingly, Harrah's is also responsible for post-judgment interest, reasonable attorneys' fees, costs of this action, and such other legal and equitable relief as the Court deems just and proper.

WHEREFORE, Plaintiffs pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

**COUNT II – VIOLATIONS OF THE FLSA –
FAILURE TO PAY WAGES
(Collective Action Under 29 U.S.C. § 216(b) Unpaid Wages,
Overtime, and Other Benefits)**

83.     The allegations set forth in foregoing paragraphs are incorporated herein by reference.

84.     The FLSA Plaintiffs and members of the FLSA Classes bring this action against Harrah's because Harrah's willfully and without good faith violated the FLSA by engaging in a pattern and practice of unlawful conduct. In particular, Harrah's refused to compensate the FLSA Plaintiffs and members of the FLSA Classes for attending quarterly rally meetings. Harrah's

23

unlawful conduct has been repeated and is consistent. Indeed, upon information and belief, Harrah's parent and sister companies have been sued for similar unlawful wage practices.

85.    The FLSA Plaintiffs and members of the FLSA Classes were and are employed by Harrah's and have been, and are, entitled to the rights, protections, and benefits provided under the FLSA.

86.    Harrah's is subject to the requirements of the FLSA.

87.    The FLSA requires that covered employers pay non-exempt employees at least a minimum wage of $7.25 per hour or their regular rate of pay for all hours worked and overtime at a rate of one and one half times the employee's regular rate of pay for hours worked over forty (40) in a workweek.

88.    Harrah's did not comply with either the minimum wage or the overtime requirement as they pertain to the work associated with attending quarterly rally meetings by the FLSA Plaintiffs and members of the FLSA Classes.

89.    As a pattern and practice, Harrah's regularly required the FLSA Plaintiffs and members of the FLSA Classes to attend rally meetings without compensation. Harrah's was aware that Plaintiffs did not receive compensation.

90.    Harrah's knew or should have known that it suffers or permits the FLSA Plaintiffs and members of the FLSA Classes to perform work which is for the benefit of Harrah's and is integral to their operations, without appropriate compensation. The conduct of Harrah's, as set forth above herein, has been willful, not in good faith, and has caused significant damages to the FLSA Plaintiffs and members of the FLSA Classes.

91.    The FLSA Plaintiffs and members of the FLSA Classes are entitled to damages under the FLSA for all uncompensated time worked within the three years preceding the filing of

this Complaint, plus periods of equitable tolling, because Harrah's acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

92.     Harrah's has acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, the FLSA Plaintiffs and members of the FLSA Classes are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid compensation pursuant to 29 U.S.C. § 216(b).

93.     Alternatively, should the Court find that Harrah's acted with good faith and reasonable grounds in failing to compensate the FLSA Plaintiffs and members of the FLSA Classes, the FLSA Plaintiffs and members of the FLSA Classes are entitled to an award of pre-judgment interest at the applicable legal rate.

94.     As a result of the aforesaid willful violations of the FLSA, compensation has been unlawfully withheld by Harrah's from the FLSA Plaintiffs and members of the FLSA Classes. Accordingly, Harrah's is also responsible for post-judgment interest, reasonable attorneys' fees, costs of this action, and such other legal and equitable relief as the Court deems just and proper.

WHEREFORE, Plaintiffs pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

### COUNT III – VIOLATIONS OF THE FLSA –
### FAILURE TO PAY WAGES
### (Collective Action Under 29 U.S.C. § 216(b) Unpaid Wages,
### Overtime, and Other Benefits)

95.     The allegations set forth in foregoing paragraphs are incorporated herein by reference.

96.     The Supervisors Plaintiffs and members of the Table Games Supervisors Subclass bring this action against Harrah's because Harrah's willfully and in bad faith violated the FLSA

by engaging in a pattern and practice of unlawful conduct. In particular, Harrah's refused to compensate the Supervisors Plaintiffs and members of the Table Games Supervisors Subclass for off-schedule work, when these employees were required to work more than five days per week or work overtime. Harrah's unlawful conduct has been repeated and is consistent. Indeed, upon information and belief, Harrah's parent and sister companies have been sued for similar unlawful wage practices.

97.    The Supervisors Plaintiffs and members of the Table Games Supervisors Subclass were and are employed by Harrah's and have been, and are, entitled to the rights, protections, and benefits provided under the FLSA.

98.    Harrah's is subject to the requirements of the FLSA.

99.    The FLSA requires that covered employers pay non-exempt employees at least a minimum wage of $7.25 per hour or their regular rate of pay for all hours worked and overtime at a rate of one and one half times the employee's regular rate of pay for hours worked over forty (40) in a workweek.

100.    Harrah's did not comply with either the minimum wage or the overtime requirement as they pertain to the Supervisors Plaintiffs and members of the Table Games Supervisors Subclass.

101.    As a pattern and practice, Harrah's regularly required the Supervisors Plaintiffs and members of the Table Games Supervisors Subclass to perform work without compensation. Harrah's was aware that Plaintiffs did not receive compensation.

102.    Harrah's knew or should have known that it suffers or permits the Supervisors Plaintiffs and members of the Table Games Supervisors Subclass to perform work which is for the benefit of Harrah's and is integral to their operations, without appropriate compensation. The

26

conduct of Harrah's, as set forth above herein, has been willful, not in good faith, and has caused significant damages to the Supervisors Plaintiffs and members of the Table Games Supervisors Subclass.

103.    The Supervisors Plaintiffs and members of the Table Games Supervisors Subclass are entitled to damages under the FLSA for all uncompensated time worked within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Harrah's acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the FLSA.

104.    Harrah's has acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, the Supervisors Plaintiffs and members of the Table Games Supervisors Subclass are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid compensation pursuant to 29 U.S.C. § 216(b).

105.    Alternatively, should the Court find that Harrah's acted with good faith and reasonable grounds in failing to compensate the Supervisors Plaintiffs and members of the Table Games Supervisors Subclass, they are entitled to an award of pre-judgment interest at the applicable legal rate.

106.    As a result of the aforesaid willful violations of the FLSA, compensation has been unlawfully withheld by Harrah's from the Supervisors Plaintiffs and members of the Table Games Supervisors Subclass. Accordingly, Harrah's is also responsible for post-judgment interest, reasonable attorneys' fees, costs of this action, and such other legal and equitable relief as the Court deems just and proper.

WHEREFORE, Plaintiffs pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT IV – VIOLATIONS OF THE NCWHA –
## FAILURE TO PAY WAGES
### (Class Action Under Federal Rule 23)

107. The allegations set forth in foregoing paragraphs are incorporated herein by reference.

108. The Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass, bring this action against Harrah's because Harrah's willfully and without good faith violated the NCWHA by engaging in a pattern and practice of unlawful conduct. In particular, Harrah's has refused to compensate the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass, for attending rally meetings, performing pre-shift work and working six days in a given week. Harrah's' unlawful conduct has been repeated and is consistent.

109. The Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisor Subclass, were and are employed by Harrah's and have been, and are, entitled to the rights, protections, and benefits provided under the NCWHA.

110. Harrah's is subject to the requirements of the NCWHA.

111. The NCWHA requires that covered employers pay every employee all wages and tips accruing to the employee on the regular payday.

112. Harrah's did not comply with this requirement as it pertains to daily uncompensated work performed by the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass.

28

113.     As a pattern and practice, Harrah's regularly required the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisor Subclass, to perform work each day without compensation.  Harrah's was aware that Plaintiffs did not receive compensation.

114.     Harrah's knew or should have known that it suffers or permits the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisor Subclass, to perform work that is for the benefit of Harrah's and is integral to their operations, without appropriate compensation. The conduct of Harrah's, as set forth above herein, has been willful, not in good faith, and has caused significant damages to the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass.

115.     The Common Law Plaintiffs and members of the Common Law Classes are entitled to damages under the NCWHA for all uncompensated time worked within the two years preceding the filing of this Complaint, plus periods of equitable tolling, because Harrah's acted willfully and knew, or showed reckless disregard of whether, its conduct was prohibited by the NCWHA.

116.     Harrah's has acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the NCWHA, and as a result thereof, the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisor Subclass, are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid an amount equal to the amount of unpaid compensation pursuant to the NCWHA.

117.     Alternatively, should the Court find that Harrah's acted with good faith and reasonable grounds in failing to compensate the Common Law Plaintiffs and members of the

Common Law Class, including the Common Law Supervisor Subclass, the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisor Subclass, are entitled to an award of pre-judgment interest at the applicable legal rate.

118.   As a result of the aforesaid willful violations of the NCWA, compensation has been unlawfully withheld by Harrah's from the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisor Subclass. Accordingly, Harrah's is also responsible for pre-judgement interest, post-judgment interest, reasonable attorneys' fees, costs of this action, and such other legal and equitable relief as the Court deems just and proper.

WHEREFORE, Plaintiffs pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT V – UNJUST ENRICHMENT
### (Class Action Under Federal Rule 23)

119.   The allegations set forth in foregoing paragraphs are incorporated herein by reference.

120.   At all times material, the Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass, conferred benefits upon Harrah's by providing unpaid pre-shift work.

121.   At all times material, Common Law Plaintiffs and the Common Law Classes, including the Common Law Supervisors Subclass, did not confer the benefits officiously or by an interference in the affairs of Harrah's in an unjustified manner, but conferred the benefits because Harrah's demanded that they do so.

122.   At all times material, the value of the benefits conferred were and remain measurable.

123.   At all times material, Harrah's consciously accepted the benefits.

30

124.    Under the circumstances, it would be inequitable for Harrah's to retain the benefit of the services without paying the value thereof.

125.    As a result, Common Law Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass, have been damaged.

WHEREFORE, Plaintiffs pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## COUNT VI – QUANTUM MERUIT
### (Class Action Under Federal Rule 23)

126.    The allegations set forth in foregoing paragraphs are incorporated herein by reference.

127.    At all times material, Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass, rendered services to Harrah's by providing pre-shift work for which the Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass, were not compensated.

128.    At all times material, Harrah's knowingly and voluntarily accepted the services.

129.    At all times material, Plaintiffs and the Common Law Classes, including the Common Law Supervisors Subclass, did not give the services gratuitously.

130.    All parties were aware that Plaintiffs, and members of the Common Law Classes, including the Common Law Supervisors Subclass, rendered services with the expectation of payment.

131.    Harrah's was unjustly enriched thereby.

132.    Plaintiffs and members of the Common Law Classes, including the Common Law Supervisors Subclass, are entitled to the reasonable value of the labor performed.

31

WHEREFORE, Plaintiffs pray for the relief requested in the Prayer for Relief set forth below in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the respective classes, pray that the Court:

1.      Certify the classes as requested herein;

2.      Enter an Order appointing Lawrence & Bundy, LLC as lead counsel for the classes;

3.      Order Harrah's to file with this Court and furnish to lead counsel a list of the names and addresses of all persons employed by Harrah's in its referenced casinos who currently work or have worked for Harrah's at either casino within the last three years;

4.      Authorize Plaintiffs' counsel to issue notice at the earliest possible time to all persons employed by Harrah's at the above referenced casinos within the last three years;

5.      Grant leave to add additional Plaintiffs by the filing of written consent forms;

6.      Enter judgement against Harrah's and award a sum that will properly, adequately, and completely compensate Plaintiffs and similarly situated employees for the nature, extent, and duration of their damages including awarding:

      a.   compensatory damages for unpaid wages and all benefits due in an amount to be determined at trial but in no event less than $5,000,000.00, exclusive of interest and costs;

      b.   an additional amount as liquidated damages;

      c.   punitive damages;

      d.   pre-judgment and post-judgment interest;

      e.   reasonable attorneys' fees and costs; and

32

f.   such other and further relief as the court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

On this 18th day of September, 2017.          Respectfully submitted,

/s/ Todd Ellis
Todd Ellis
North Carolina Bar No. 22039
Law Office of Todd Ellis, P.A.
7911 Broad River Road
Suite 100
Irmo, South Carolina 29063
(803) 732-0123
todd@toddellislaw.com

Thomas R. Bundy III*
Lawrence & Bundy LLC
8115 Maple Lawn Blvd., Suite 350
Fulton, Maryland 20759
240-786-4512 (main)
240-786-4998 (direct)
240-786-4501 (fax)
thomas.bundy@lawrencebundy.com

Leslie J. Bryan*
Lawrence & Bundy LLC
1180 West Peachtree Street, N.W.
Suite 1650
Atlanta, Georgia 30309
(404) 400-3350
leslie.bryan@lawrencebundy.com

Lovita Tandy*
Tandy Legal
4480 South Cobb Dr., Suite H-315
Smyrna, Georgia 30080
770-274-6179
ltandy@tandylegal.com

**Attorneys for Plaintiffs**

* *Pro hac application forthcoming*

33