## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:17CV262

| | |
|---|---|
| **CHARLOTTE HUMBLE, SHARON ISACKSON, JUSTIN HUMBLE, TREVOR SIMMONS, MARGARET HOOVER, BELINDA KING, and JENNIFER SPAYTH BROWNING,** individually and on behalf of all others similarly situated,<br><br>       **Plaintiffs,**<br><br>    **v.**<br><br>**HARRAH'S NC CASINO COMPANY, LLC,** d/b/a Harrah's, Harrah's Cherokee Valley River Casino, and Harrah's Cherokee Casino Resort,<br><br>       **Defendant.**<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **MEMORANDUM AND RECOMMENDATION** |

This matter is before the Court on Defendant's Motion to Dismiss (# 26) filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7). The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons addressed below, the Court will recommend that Defendant's Motion to Dismiss be GRANTED.

## I.     Procedural Background

On September 18, 2017, Plaintiffs filed a Collective and Class Action Complaint (# 1) against Defendant, their current or former employer, to seek redress for Defendant's abuse of federal and State wage and hour laws. The action was brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et seq., the North Carolina

Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq., and North Carolina common law. On November 2, 2017, Plaintiffs filed an Amended Collective and Class Action Complaint (the "Amended Complaint") (# 20).

On November 16, 2017, Defendant filed the instant Motion to Dismiss (# 26).[1] Plaintiffs filed a Response in Opposition (# 34), to which Defendant filed a Reply (# 40).

## II.    Factual Background[2]

The facts, as alleged in Plaintiff's Amended Complaint (# 20), are as follows:

### A.    Defendant operates its casinos as one entity.

The Cherokee Casino Resort opened in 1997. Am. Compl. (# 20) ¶ 21. In 2015, Defendant opened its Cherokee Valley River Casino. Id. Defendant advertises the Harrah's Cherokee Casinos as "two great properties, one big family." Id. ¶ 22. The Harrah's Cherokee Casinos hold combined job fairs and list job vacancies using the same website. Id. Additionally, prospective employees interested in either casino are directed to call the same telephone number. Id.

Defendant provides its employees, such as Plaintiffs and others similarly situated, with extensive training to ensure that they are able to discuss Defendant's history, to include describing and discussing Defendant's organizational culture, standards

_____

[1] Defendant filed the instant Motion to Dismiss in lieu of answering the Amended Complaint. Def.'s Mot. (# 26) at 2.

[2] The Court must assess the facts differently with respect to the two grounds for dismissal before it. In particular, when addressing Defendant's Motion to Dismiss for lack of subject matter jurisdiction, Plaintiff bears the burden of establishing jurisdiction, including Article III standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). As for the Rule 12(b)(7) motion, Defendant, the moving party, bears the burden of establishing that an absent party is necessary and indispensable under Rule 19(b). See Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005).

expectations, benefits, rewards, and living Defendant's brand.  Id. ¶ 23.  In parts of the training materials, Defendant even refers to Plaintiffs and other similarly-situated employees.  Id.

Defendant offers its rewards program, a program promoted by its parent, Caesar's Entertainment Corporation, at the Harrah's Cherokee Casinos.  Id. ¶ 24.  There is no real distinction between the Harrah's Cherokee Casinos and any other casino owned/operated by Caesar's Entertainment Corporation or Defendant using their own employees.  Id.

After Defendant hires an employee, it uses the same employee handbook for employees at both casinos.  Id. ¶ 25.  In the employee manual provided to Plaintiffs and others similarly situated, Defendant states that its bulletin board will only be used to post information required by applicable federal law.  Id.  Upon information and belief, Defendant posts information required to be posted by employers related to FLSA compliance.  Id.

Without regard to which casino they work, Plaintiffs and other similarly-situated employees access Defendant's same employee portal/intranet, which communicates critical work information to employees at both of Harrah's Cherokee Casinos.  Id. ¶ 26. Upon information and belief, this portal/intranet is the same type used by employees of Defendant and/or Caesar's Entertainment Corporation around the country.  Id.

In September 2015, when the Valley River Casino opened, Defendant had Cherokee Resort Casino employees working at the Cherokee Valley River Casino as dealers.  Id. ¶ 27.  Now, Defendant allows Plaintiffs and other similarly-situated employees to work at either casino.  Id.  In fact, employees do not have to reapply for employment to transfer

from one casino to another. Id. Moreover, transferring employees maintain their seniority for "PTO"[3] calculations and other employment benefits. Id. Transferring employees also retain the same employee number provided by Defendant. Id.

**B.  Defendant employs Plaintiffs and similarly-situated employees at the Harrah's Cherokee Casinos.**

Defendant employs Plaintiffs and other similarly-situated individuals, who perform a variety of jobs as part of Harrah's Cherokee Casinos' operation. Id. ¶ 28. Defendant hires Plaintiffs and other similarly-situated individuals and then trains them extensively. Id. ¶ 29. In particular, it is believed they receive Occupational Safety and Health Administration ("OSHA") training, responsible gaming training, and Skill Soft computer program training. Id. Defendant also outfits its employees, such as Plaintiffs and others who are similarly situated, with color-coded uniforms that bear Defendant's logo. Id. ¶ 30. The colors of the uniforms correspond with the employees' general job position, such as servers, dealers, and security. Id.

Defendant sets the employees' work schedules by posting them on Defendant's employee portal/intranet. Id. Defendant also tracks its employees' attendance by managing the sign-in and log-in processes. Id. Defendant also supervises its employees' work and performs employee reviews, which includes making determinations regarding compensation adjustments. Id.

In addition to hiring Plaintiffs and others similarly situated as employees, Defendant

---

[3] The acronym "PTO" is not defined in the Amended Complaint, but it presumably refers to paid time off.

also fired them or modified the terms or conditions of their employment, to include reinstating them, providing them reimbursement for lost wages, and administering disciplinary action. Id. ¶ 31. Moreover, Defendant directs, controls, or supervises employees like Plaintiffs and others similarly situated, which includes issuing "Errors In Procedures" to employees as part of the disciplinary process. Id.

Defendant handles functions ordinarily carried out by an employer, such as handling payroll records, securing and providing workers' compensation insurance, and providing the equipment, tools, or materials necessary to complete work. Id. ¶ 32. Upon information and belief, Defendant is the plan administrator for some of the employee benefit plans at the Harrah's Cherokee Casinos. Id.

Making use of its experience operating casinos, Defendant provides its Cherokee Casinos employees with detailed policies, practices, and procedures that govern each part of the work performed by Plaintiffs and others similarly situated. Id. ¶ 33. Plaintiffs and similarly-situated employees are required to follow the terms of Defendant's employment handbook and related materials, as it happens to provide the same conditions of employment for Harrah's Cherokee Casinos employees as Defendant, through its parent company, provides to its employees at casinos operating in other states. Id. 34. The conditions include but are not limited to the following:

(1) The same employee assistance programs available to employees of other casinos under Defendant's brand;

(2) Access to the same company store;

(3) The same hotel room discounts;

5

(4) The same paid time off schedule;

(5) The same leave of absences, including bereavement leave, jury duty leave, military leave, personal leave of absence, and the Family and Medical Leave Act of 1993 ("FMLA");

(6) The same opportunities to transfer to other casinos;

(7) The same employee hotline; and

(8) Access to the same individual recognition and rewards, to include the $1,000 Chairman's Award, which was established in 1987 before the casinos opened.

Id. In light of the foregoing list, Defendant clearly employs Plaintiffs and similarly-situated employees. Id. ¶ 35.

## C. Defendant required Plaintiffs to perform unpaid work.

Defendant openly recognizes its obligation to pay employees for their time working.

Id. ¶ 36. In fact, Defendant's Handbook specifically states:

The following are considered hours worked and the employee must be paid. If this work exceeds a regularly scheduled 40-hour week, overtime pay will be calculated:

- Work performed at home as approved by department manager;

- Attending mandatory meetings and training sessions (excluding pre-employment training or training attended by choice to prepare for another job, e.g. Dealer School, Exploring Supervisory Opportunities);

- Reconciling cash drawers at the end of the shift;

- Breaks; and

- Serving as an elected participant on a Board of Review.

6

Id. The Handbook provides that "overtime rates will apply for all hours in excess of forty (40) per week." Id. Defendant failed to follow these written policies. Id.

Defendant had a common requirement for its employees, such as the Table Games Operator Plaintiffs and those similarly-situated employees, to clock in before the beginning of their scheduled shift. Id. ¶ 37. Plaintiffs and other similarly-situated employees arrived at work around 37 minutes preceding the start of their shift because the policy focused on ensuring they were present, ready, willing, and able to work 30 minutes preceding the start of their scheduled shift. Id.

Pursuant to this Early Attendance Policy, Plaintiffs would sign in after walking past the security desk. Id. Defendant's employee seated at the sign-in area would clock-in (i.e., log) Plaintiffs into the attendance system. Id.

Defendant's Handbook requires Plaintiffs and similarly-situated employees to clock in "immediately before starting work." Id. The time system tracked the employees' actual hours work, but Defendant paid employees pursuant to their scheduled work shift only. Id. ¶ 38.

After signing and clocking into work, Defendant required its employees, like Plaintiffs and similarly-situated employees, to attend mandatory pre-shift meetings, which were referred to as "Buzz Sessions," or perform other work-related tasks, to include donning and doffing uniforms, training on table games, and preparing to work the tables. Id. ¶ 39. The pre-shift work, including Buzz Sessions, was integral to each employee's principal work activities. Id.

The Table Games Supervisors were not required to clock in, but they were required

7

to be at work prior to the start of their scheduled shift and perform work similar to other employees.  Id. ¶ 40.  Plaintiffs and other similarly-situated employees had no option but to perform the compensable, pre-shift work without payment.  Id. ¶ 41.  If an employee failed to attend the mandatory meetings or arrived later than required under the Early Attendance Policy, the employee would accumulate points against their attendance record. Id.  Based on the number of points an employee had, they would be subject to discipline and termination.  Id.  After Plaintiffs and similarly-situated employees logged into Defendant's attendance system, they were on duty and engaged to perform their jobs subject to Defendant's direction and control.  Id. ¶ 42.

Defendant did not pay its employees for their pre-shift work, which was contrary to Defendant's policies and State and federal law.  Id.  Defendant only compensated Plaintiffs and other similar-situated employees for their scheduled work shift (minus any time they took off), without regard to when they actually arrived and started working.  Id.

Defendant's Handbook requires pay for attending Buzz Sessions and pre-shift work. Id. ¶ 43.  Defendant's Handbook, in pertinent part, states:

> *Pay for Buzz Session/Uniform Changes*
>
> Employees should clock in before acquiring keys, radios, wallets, etc.  They should also be paid for buzz sessions.  Employees who must change into uniforms on property should clock in before changing.

Id. The Handbook also states that "non-exempt employees[4] required to attend scheduled meetings will be paid at their primary rate of pay for the actual length of the meeting."  Id.

---

[4] The designations "exempt" and "non-exempt" refer to an employee's status under the FLSA. 29 U.S.C. § 201 et seq.

8

Defendant failed to comply with these written policies.  Id.

Defendant also required its Cherokee Casinos employees, including Plaintiffs, to attend quarterly rally meetings, without pay.  Id. ¶ 44.  Rally meetings lasted two to four hours.  Id.  Rally meetings were integral to each employee's principal work activities and occurred when employees, such as Plaintiffs, were on duty and engaged to work. Id.  If an employee failed to attend the rally meeting, Defendant would "write up" the employee and her or she would be subject to discipline.  Id.  The failure to pay employees for their attendance at quarterly rally meetings violated Defendant's own policies and federal and State wage law.  Id.

At times, Defendant also required its Table Games Supervisors, like Plaintiffs Belinda King and Jennifer Spayth Browning, to work an extra day (a sixth day) per week without additional compensation.  Id. ¶ 45.  Table Games Supervisors received a salary contingent upon a five-day workweek.  Id.  Defendant did not pay the Table Games Supervisors for the extra day because it misclassified these employees as exempt employees.  Id.

Defendant's Table Games Supervisors are not exempt and earn around $50,000 per year.  Id. ¶ 46.  Table Games Supervisors do not manage the enterprise, do not regularly direct the work of other full-time employees, and do not possess the authority to hire/fire other employees.  Id. The Table Games Supervisors' recommendations for hiring and firing are not given significant weight, if any.  Id.

The Table Games Supervisors do not perform work directly related to Defendant's management or general business operations, and they lack discretion and independent

9

judgment with respect to significant matters given in the Handbook, instructions, and training they receive and must follow.  Id. Defendant requires the Tables Games Supervisors to use PTO if they leave work early because of a slow night, a requirement that would be unavailable to Defendant if the Tables Games Supervisors were actually exempt.  Id.  Consequently, the Tables Games Supervisors have always been non-exempt employees as a matter of fact and law.  Id.  Upon information and belief, Defendant presently classifies its Table Games Supervisors as non-exempt employees.  Id.

Paychecks issued to Plaintiffs and similarly-situated employees are for a maximum of 40 hours per work, despite the fact that the employee worked in excess of 40 hours in a week.  Id. ¶ 47.  Defendant regularly required employees to work more than 40 hours per week (when including pre-shift work).  Id.  Defendant required employees to spend about a full workday or two worth of time each year at the rally meetings.  Id.  Defendant refused to pay its Table Games Supervisors for a full day of work periodically when they worked six days instead of the scheduled five-day workweek.  Id.  Accordingly, Defendant failed to pay straight time, overtime wages, and other benefits to Plaintiffs when their time at work exceeded 40 hours per week.  Id.

The approximate sums due to each Plaintiff, or similarly-situated employee, are not known.  Id. ¶ 48.  This information is within the exclusive custody and control of Defendant.  Id.  Defendant is required by law to maintain the hours worked by Plaintiffs and others similarly situated.  Id.

## II.    Legal Standards

### A.    Fed. R. Civ. P. 12(b)(1)

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (holding that a court "must dismiss the complaint in its entirety" when it lacks subject matter jurisdiction over a matter). Where a defendant contends that a complaint fails to allege facts upon which the court can base subject matter jurisdiction, the court, like ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), assumes as true the factual allegations in the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). If, however, the defendant contends that the jurisdictional allegations contained in the complaint are false, the court may go beyond the allegations of the complaint and conduct an evidentiary hearing in order to determine if there are facts to support the court's exercise of jurisdiction over the dispute. Id.

**B.      Fed. R. Civ. P. 12(b)(7)**

A Federal Rule of Civil Procedure 12(b)(7) motion to dismiss addresses the failure to join a required party under Federal Rule of Civil Procedure 19. Marina One, Inc. v. Jones, 22 F. Supp. 3d 604, 607 (E.D. Va. 2014); see Fed. R. Civ. P. 12(b)(7). Rule 12(b)(7) motions involve a two-step inquiry. Under the first step, the court must determine whether a party is necessary under Rule 19(a) because of its relationship to the matter under consideration. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999). If the absent party is necessary, it must be ordered into the action so long as the joinder does not destroy the court's jurisdiction. Id. Pursuant to the second step, when a party cannot be joined because it would destroy the court's jurisdiction, the court must decide whether the

action can continue without the party, or whether the party is indispensable under Rule 19(b) and the action must be dismissed.  Id.  Dismissal under Rule 12(b)(7) is disfavored. Id. at 441; see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc., 210 F.3d 246, 250 (4th Cir. 2000) ("Dismissal of a case [for nonjoinder] is a drastic remedy . . . which should be employed only sparingly.") (quoting Teamsters Local Union No. 171 v. Keal Driveway Co., 173 F.3d 915, 918 (4th Cir. 1999)).

## III.  Discussion

### A.  This Court has subject matter jurisdiction over Plaintiff's FLSA claims against Defendant.

Defendant initially argues that Plaintiffs' Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the Court lacks subject matter jurisdiction on the basis of tribal sovereign immunity.  Def.'s Mem. Supp. (# 27) at 6-10. In particular, Defendant contends that it has provided a declaration that makes clear Plaintiffs were actually employed by the Tribal Casino Gaming Enterprise ("TCGE"), an Eastern Band of Cherokee Indians ("EBCI") tribal enterprise.  Id. at 6.  Defendant further contends:  (1) Congress has not abrogated sovereign immunity under the FLSA; and (2) TCGE has not waived its sovereign immunity.  Id. at 8-10.  Defendant concludes that dismissal is warranted because the Court lacks subject matter jurisdiction based upon tribal sovereign immunity.  Id. at 6.

At the outset, the Court notes that the plaintiff bears the burden of proving that subject matter jurisdiction exists.  See Richmond, Frederickburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  Further, the Court should grant a Rule

12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

Relying on the Declaration of Jo Ray ("Ray")[5], Defendant argues that Plaintiffs were/are actually employed by TCGE, an EBCI tribal enterprise.[6] Def.'s Mem. Supp. (# 27) at 6; see Kiowa Tribe of Oklahoma v. Manuf. Techs., Inc., 523 U.S. 751, 754 (1998) ("[A]n Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."). Neither TCGE nor EBCI are named defendants to this lawsuit. See Am. Compl. (# 20). In fact, the only named defendant in this lawsuit is Harrah's NC Casino Company, LLC d/b/a Harrah's, Harrah's Cherokee Valley River Casino, and Harrah's Cherokee Casino Resort. See id. Therefore, Defendant is not entitled to dismissal for lack of subject matter jurisdiction on the basis of tribal sovereign immunity.

**B.     This Court has subject matter jurisdiction over Plaintiff's NCWHA claims against Defendant.**

Defendant next argues that Plaintiffs' NCWHA claim should be dismissed under Rule 12(b)(1) for lack of subject matter because Plaintiffs cannot state a cause of action. Def.'s Mem. Supp. (# 27) at 11-12. In particular, Defendant contends that the Court can easily dispense with Plaintiff's NCWHA claim because the factual basis is so similar to Plaintiffs' FLSA claim. Id. at 11. Defendant concludes that Plaintiffs NCWHA claim should be barred for lack of subject matter jurisdiction. Id. at 12.

---

[5] Ray is currently employed as Regional Vice President, Human Resources and Community Relations for TCGE. Ray Decl. (# 27) Ex. A ¶ 2.
[6] EBCI is a federally-recognized Indian tribe located in Cherokee, North Carolina. Id. ¶ 4.

13

For the reasons outlined in Section I.A., the Court concludes that dismissal on this basis is not warranted. Accordingly, the Court concludes that it has subject matter jurisdiction over Plaintiffs' NCWHA claims against Defendant.

### C. This Court has subject matter jurisdiction over Plaintiff's common law claims against Defendant.

Next, Defendant argues that Plaintiffs' common law claims should also be dismissed on sovereign immunity grounds. Def.'s Mem. Supp. (# 27) at 12-13. Defendant contends that the common law claims are supported by the same violations as Plaintiffs' FLSA and NCWHA claims. Id. at 12.

For the reasons outlined in Section I.A., the Court concludes that dismissal on this basis is not warranted. Consequently, the Court concludes that it has subject matter jurisdiction over Plaintiffs' common law claims against Defendant.

### D. The Court need not address Defendant's tribal exhaustion doctrine argument.

Defendant next argues that it is beyond dispute that the tribal court has subject matter jurisdiction over this action.[7] Def.'s Mem. Supp. (# 27) at 14. In particular,

---

[7] "The tribal exhaustion doctrine is a judicially created rule that counsels federal court abstention in certain cases involving Indian tribes." Whiteagle v United States, Nos. 15-cv-449-wmc, 15-cv-390-wmc, 11-cr-65-wmc, 2017 WL 53294, at *2 (W.D. Wis. Jan. 4, 2017); see Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation, 495 F.3d 1017, 1021 (8th Cir. 2007) (recognizing that pursuant to the tribal exhaustion doctrine, "due considerations of comity, federal court jurisdiction does not properly arise until available remedies in the tribal court system have been exhausted."). The rule requires litigants, under some circumstances, to exhaust their remedies in tribal court prior to seeking redress in federal court. Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians, 807 F.3d 184, 195 (7th Cir. 2015). Unless it is clear that tribal jurisdiction does not exist, "[a] federal court should 'stay [ ] its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction.'" Gaming World Int'l Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 849 (8th Cir. 2003) (quoting Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 857 (1985)).

14

Defendant contends that Plaintiffs' claims stem from alleged payroll policies at two TCGE casinos located on EBCI Indian Reservation Lands. Id. Therefore, Defendant concludes that the instant action should be dismissed and brought in tribal court.[8] Id. at 15. Because Defendant's Motion to Dismiss is clearly resolved on the next basis, the Court need not address the tribal exhaustion doctrine.

### E. TCGE is a necessary and indispensable party to this lawsuit.

Defendant next argues that Plaintiff's Amended Complaint should be dismissed under Rules 12(b)(7) and 19 for failure to join a necessary and indispensable party. Def.'s Mem. Supp. (# 27) at 15-17. In particular, Defendant contends that Plaintiff erred by failing to join TCGE as a necessary and indispensable party to this lawsuit under Rule 19. Id. at 15-16.

With a Rule 12(b)(7) motion, the burden of proof rests with the moving party. See Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005) (noting that the party asserting a Rule 12(b)(7) motion bears the burden of showing that a party not joined is both necessary under Rule 19(a) and indispensable under Rule 19(b)). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." Owens, 186 F.3d at 441.

Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541 (4th Cir. 2006), is

---

[8] In support of its argument, Defendant relies upon Madewell v. Harrah's Cherokee Smokey Mountains Casino, 730 F. Supp. 2d 485, 488 (W.D.N.C. 2010), and Fid. & Guar. Ins. Co. v. Bradley, 212 F. Supp. 2d 163, 166 (W.D.N.C. 2002). Def.'s Mem. Supp. (# 27) at 14.

instructive on this issue. In Yashenko, the plaintiff, a terminated casino employee, filed a state court action against the casino management company that had contracted with the Indian tribe to operate the tribal gaming enterprise for violating the Family and Medical Leave Act ("FMLA"). Id. at 545. The action was removed to federal court, and the plaintiff added claims of race discrimination under § 1981 and wrongful discharge in violation of North Carolina public policy. Id. The district court granted summary judgment for the defendant on the FMLA and § 1981 claims and dismissed the wrongful discharge claim without prejudice. Id.

On appeal, the Fourth Circuit Court of Appeals noted that in June 1996, the EBCI entered into a Management Agreement with the defendant concerning EBCI's gaming enterprise. Id. at 544. Pursuant to the Agreement, the defendant worked as the manager for EBCI's delegate, TCGE. Id. All employees hired by the defendant to staff the casino were considered employees of TCGE, even though the defendant maintained supervisory authority over them. Id.

The Fourth Circuit engaged in a Rule 19 analysis and determined that EBCI was a necessary party under Rule 19(a) and an indispensable party under Rule 19(b) to the plaintiff's § 1981 cause of action. Id. at 552-53. The Fourth Circuit concluded that because EBCI's sovereign status prevented its joinder, the district court must be affirmed. Id. at 553.

> **1.** **Rule 19(d) requires a court to apply Rule 19 to the extent that it does not conflict with Rule 23.**

Relying solely on secondary legal sources, Plaintiff argues that Federal Rule of Civil

Procedure 19 does not apply in this case.  Pl.'s Resp. Oppos. (# 34) at 25-26.  In particular, Plaintiff contends that Rule 19(d) provides an exception to compulsory joinder that necessitates the denial of Defendant's Motion to Dismiss under Rule 12(b)(7).  Id. at 26.

The instant case is brought as a class and collective action.  See Am. Compl. (# 23). Federal Rule of Civil Procedure 19(d) provides that it is "subject to Rule 23."  Fed. R. Civ. P. 19(d).  The meaning of Federal Rule of Civil Procedure 19(d) has been the subject of different interpretations.  See Thompson v. Bd. of Educ., 71 F.R.D. 398 (W.D. Mich. 1976) (holding rule 19 is not applicable to class actions), rev'd on other grounds, 709 F.2d 1200 (6th Cir. 1983); but see Shimkus v. Gersten Companies, 816 F.2d 1318, 1321 (9th Cir. 1987) (holding that Rule 19 applies to the extent that it does not conflict with the provisions of Rule 19).  Several district courts have followed the Ninth Circuit's holding.  See e.g. Eberhard v. Old Republic National Title Ins. Co., No. 1:11CV834, 2013 WL 12293449, at *8 (N.D. Ohio Sept. 13, 2013); Loef v. First American Title Ins. Co., No. 08-cv-311-P-S, 2011 WL 1326945, at *3 (D. Me. Apr. 4, 2011); Speaks Family Legacy Chapels, Inc. v. National Heritage Enterprises, Inc., No. 2:08-cv-04148-NKL, 2009 WL 2391769, at *8 (W.D. Mo. Aug. 3, 2009); Thompson v. Jiffy Lube Intern., Inc., 505 F. Supp. 2d 907, 922 (D. Kan. 2007).[9]

The Court agrees with the Ninth Circuit's holding in Shimkus because the language of Rule 19 does not expressly exempt class actions from its provisions.  See Fed. R. Civ. P. 19(d).  Rather, Rule 19(d) merely requires a court to apply Rule 19 to the extent that it

---

[9] The Fourth Circuit Court of Appeals has not addressed this issue.

17

does not conflict with Rule 23.  See id. Plaintiff does not argue that there is an actual conflict between Rules 19 and 23.  Therefore, the Court need not further address the issue.

### 2. TCGE is a necessary party under Rule 19(a).

Defendant argues that EBCI's tribal enterprise, TCGE, is a necessary and indispensable party to this litigation.  Def.'s Mem. Supp. (# 27) at 16.  Defendant further argues that for the same reasons set forth in Yashenko, TCGE would be an indispensable party to this action, and its absence compels dismissal.  Id.  In particular, EBCI contracts with Defendant to manage and operate the two casinos where Plaintiffs are currently or were previously employed.  Id. at 16-17 (citing Ray Decl. ¶ 6).  Additionally, pursuant to a management agreement between them, EBCI has delegated its rights under the management agreement to TCGE.  Id. at 17 (citing Ray Decl. ¶ 7).

Defendant contends that similar to Yashenko, Plaintiffs allege in their Amended Complaint that Defendant has violated the FLSA, the NCWHA, and North Carolina common law.  Id. Moreover, Defendant contends that any judgment in the absence of TCGE would impair the contractual interests between EBCI, together with its tribal enterprise TCGE, and Defendant as well as the EBCI's sovereign capacity to negotiate contracts and govern the reservation.  Id. Defendant asserts that any decision in the absence of TCGE would not be full relief for Plaintiffs because TCGE would not be precluded from imposing the same alleged payroll policies at issue.  Id.  Finally, Defendant concludes that litigating this case without TCGE could subject both Defendant and TCGE to inconsistent obligations.  Id.

Under the first step in the Rule 19 analysis, this Court must determine whether

TCGE is a necessary party in the instant action. Pursuant to Rule 19(a), a party is to be joined if feasible when (1) the court cannot accord complete relief among the existing parties; (2) the party's absence may, as a practical matter, impair or impede that party's ability to protect its interest; or (3) the party's absence may subject the existing parties to a substantial risk of incurring multiple or otherwise inconsistent obligations. See Fed. R. Civ. P. 19(a)(1).

Defendant has provided the Declaration of Jo Ray, Regional Vice President, Human Resources and Community Relations for Tribal Casino Gaming Enterprise ("TCGE"), which provides the necessary factual background for the Court to decide this issue. TCGE is a wholly-owned and operated enterprise of the EBCI. Ray Decl. (# 27) Ex. A ¶ 3. EBCI is a federally-recognized Indian tribe located in Cherokee, North Carolina. Id. ¶ 4. All TCGE employees, including Plaintiffs, are employees of a tribal enterprise. Id. ¶ 5.

EBCI has a Management Agreement with Defendant to oversee both the management and operations of the two casinos located on EBCI Indian Reservation lands. Id. ¶ 6. Defendant has one employee working on the casino property to facilitate the management services it provides to EBCI. Id. EBCI has expressly delegated its obligations and rights under the Management Agreement to TCGE. Id. ¶ 7.

Plaintiff Charlotte Humble was formerly employed by TCGE as a table games operator at Cherokee Valley River Casino. Id. ¶ 8. Plaintiff Sharon Isackson is currently employed by TCGE as a table games operator at Cherokee Valley River Casino and previously worked as a table games operator at Cherokee Resort Casino. Id. ¶ 9. Plaintiff Justin Humble is currently employed by TCGE as a table games operator at Cherokee

Valley River Casino. Id. ¶ 10. Plaintiff Margaret Hoover is currently employed by TCGE as a table games operator at Cherokee Valley River Casino. Id. ¶ 11. Plaintiff Trevor Simmons was formerly employed by TCGE as a table games operator at Cherokee Valley River Casino. Id. ¶ 12. Plaintiff Belinda King was formerly employed by TCGE as a table games supervisor at Cherokee Valley River Casino. Id. ¶ 13. Plaintiff Jennifer Spayth Browning was formerly employed by TCGE as a table games supervisor at Cherokee Valley River Casino. Id. ¶ 14.

Plaintiffs were subject to the rules and regulations of the Cherokee Tribal Gaming Commission during their employment. Id. ¶ 15. Plaintiffs' employment with TCGE was conditioned on them passing background checks performed by the Cherokee Tribal Gaming Commission. Id.

Under the first factor of Rule 19(a), whether the court cannot accord complete relief among the existing parties, it appears that Plaintiff was actually employed by TCGE. See Ray Decl. (# 27) Ex. A ¶ 5. Because Plaintiffs' claims are workplace claims, TCGE, their "real" employer, must be joined for complete relief.

With respect to the second factor, the Court must address whether the party's absence may, as a practical matter, impair or impede that party's ability to protect its interest. The Court concludes that TCGE, Plaintiffs' "real" employer, must be present in the litigation to protect its interest against Plaintiffs' allegations.

Under the third and final factor, the party's absence may subject the existing parties to a substantial risk of incurring multiple or otherwise inconsistent obligations. Because the failure to add TCGE could quite possibly lead to multiple or inconsistent obligations,

TCGE must be joined.

In light of the foregoing, the Court finds that TCGE is a necessary party under Rule 19(a).

### 3.    TCGE cannot be joined.

Under the second step of the Rule 19 analysis, this Court must determine whether TCGE can be joined.  TCGE cannot be joined as a party in this case as a result of its tribal immunity.  See Madewell v. Harrah's Cherokee Smoke Mountains Casino, No. 2:10CV8, 2010 WL 2574079, at *2 (W.D.N.C. May 3, 2010) (recognizing that TCGE enjoys tribal immunity); see also Stillaguamish Tribe of Indians v. Washington, No. 3:16-CV-05566-RJB, 2017 WL 3424942, at *4 (W.D. Wash. Aug. 9, 2017) ("As 'quasi-sovereign nations,' Santa Clara Pueblo v. Martinex, 436 U.S. 49, 71 (1978), Indian tribes are generally immune from suit.").

### 4.    This action should not proceed without TCGE.

The third and final step in the Rule 19 analysis requires a determination of whether "in equity and good conscience" the action should proceed in the absence of TCGE, or whether it should be dismissed.  Fed. R. Civ. P. 19(b).  The factors to be considered are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by:  (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Id.

In Kescoli v. Babbitt, 101 F.3d 1304 (9th Cir. 1996), the Ninth Circuit Court of Appeals reviewed the district court's joinder determination under Rule 19. Id. at 1309. Under the first factor of Rule 19(b), the Ninth Circuit noted that the Navajo Nation and the Hopi Tribe had an interest in the litigation. Id. at 1311. Thus, the first factor weighed in favor of dismissal. Id. Pursuant to the second factor, the Ninth Circuit concluded that the district court correctly found that potential prejudice to the Navajo Nation and the Hopi Tribe could not be effectively minimized because relief for the plaintiff could not be effectively shaped, in their absence, to avoid prejudice to them. Id. The Ninth Circuit concluded that while the third and fourth factors may favor allowing the plaintiff to proceed with her action, the Court had also "recognized that a plaintiff's interest in litigating a claim may be outweighed by a tribe's interest in maintaining sovereign immunity." Id. (quoting Confederated Tribes v. Lujan, 928 F.2d 1496, 1500 (9th Cir. 1991)). The Ninth Circuit held that when a necessary party is immune from suit, there may be "very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor." Id. (quoting Lujan, 928 F.2d at 1499). The Ninth Circuit ultimately held as follows:

> Based on the need to protect tribal sovereignty and because the factors do not clearly weigh in favor of allowing [the plaintiff] to proceed with her action, the district court correctly determined that the Navajo Nation and the Hope Tribe are indispensable parties.

Id.

In Enterprise Management Consultants v. United States ex rel. Hodel, 883 F.2d 890 (10th Cir. 1989), the Tenth Circuit Court of Appeals addressed whether under Rule 19(b) the Tribe was an indispensable party so that the action cannot in equity and good

22

conscience proceed in its absence. Id. at 893. The Tenth Circuit noted the effect this action would have on the Tribe's interest in the contract and also the fact that the suit would effectively abrogate the Tribe's sovereign immunity by adjudicating its interest in that contract without consent. Id. at 894.

The Tenth Circuit determined that this case was distinguishable from those cases where the United States initiates suit on behalf of a tribe and adequately represents the tribe's interest as a plaintiff. Id. The Tenth Circuit noted that "[w]hen, as here, a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." Id. (quotations omitted).

With respect to the instant case, TCGE is a necessary party under Rule 19(a) that is immune from suit. Under Rule 19(b), immunity is deemed a "compelling factor" to demonstrate that the party is indispensable. See Kescoli, 101 F.3d at 1311. Tribal sovereign immunity prohibits the joinder of TCGE in this case. Therefore, dismissal of the case is warranted under Rule 12(b)(7).

## IV. Conclusion

In light of the foregoing, the Court RECOMMENDS that Defendant's Motion to Dismiss (# 26) be GRANTED, and this case be dismissed.

Signed: June 1, 2018

Dennis L. Howell
United States Magistrate Judge

**<u>Time for Objections</u>**

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).