# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### Case No. 1:17-cv-00262-MR-DLH

CHARLOTTE HUMBLE, SHARON
ISACKSON, JUSTIN HUMBLE,
TREVOR SIMMONS, MARGARET
HOOVER, BELINDA KING AND
JENNIFER SPAYTH BROWNING,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

vs.

HARRAH'S NC CASINO
COMPANY, LLC, d/b/a Harrah's,
Harrah's Cherokee Valley River
Casino, and Harrah's Cherokee
Casino Resort,

        Defendant.

**PLAINTIFFS' COUNSEL'S
SUPPLEMENTAL UNOPPOSED
MOTION FOR ATTORNEYS' FEES,
COSTS AND SERVICE AWARDS
AND MEMORANDUM OF LAW**

      Counsel for seven named Plaintiffs and 168 Opt-in Plaintiffs (collectively

"Plaintiffs"), pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. §

216(b), and consistent with the Parties' Confidential Settlement Agreement,

respectfully moves the Court, as set forth herein, for awards of (1) attorneys' fees,

(2) reimbursable costs, and (3) incentive or service payments. Defendant Harrah's

NC Casino Company LLC ("Harrah's") does not oppose the requested relief.

## MEMORANDUM OF LAW IN SUPPORT

This case involves claims against Harrah's for allegedly failing to pay Plaintiffs for off-the-clock work. Plaintiffs allege that Harrah's is a joint employer even if Plaintiffs' "formal" employer is the Eastern Band of Cherokee Indians (the "Tribe"), a federally recognized Indian tribe that may be immune from suit. Thus, this case turns on the novel and complex issue of whether the Tribe is a necessary party under Federal Rule of Civil Procedure 19 if Harrah's is an alleged jointly and severally liable joint employer. But after substantial arms' length negotiations, the Parties agreed to settle the case. Now, for their efforts handling this litigation over the past two and a half years including on appeal, Plaintiffs' Counsel (consisting of three firms) seek an award of the settlement fund for reasonable and justified attorneys' fees totaling $302,193.81 and costs totaling $11,306.19. Counsel also seek incentive payments totaling $16,000 of the fund for the assistance provided by eleven Plaintiffs during the case. For the reasons set forth herein, Plaintiffs' Counsel respectfully request that the Court approve these awards if and/or when it finally approves the settlement.

## I.     BACKGROUND OF CASE AND SETTLEMENT

Harrah's is a North Carolina Corporation that, through a contract with the Tribe, managed and controlled the Harrah's Cherokee Valley River Casino and Harrah's Cherokee Casino Resort. (ECF No. 20.) Plaintiffs, and 168 employees

who opted into this case, are current and former table games dealers, dual-rate dealers, and table game supervisors at the casinos. Plaintiffs sued Harrah's as a joint employer alleging that it failed to pay Plaintiffs for 30 minutes of daily pre-shift work and quarterly "rally meetings." (*Id.*) Plaintiffs also allege supervisors were misclassified as exempt employees and Harrah's required them to work an extra day each month without pay. (*Id.*) Plaintiffs brought their claims as a collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and as a Federal Rule of Civil Procedure 23 class action under the North Carolina Wage Act, N.C. Gen. Stat. § 95-25.1 *et seq.* ("NCWHA") and North Carolina common law. (ECF No. 20.)

Harrah's moved to dismiss Plaintiffs' claims, arguing (1) the Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the Tribe is Plaintiffs' actual employer and is immune from suit; and (2) the Tribe is a required party that cannot be joined given its immunity, thus necessitating dismissal under Federal Rules of Civil Procedure 12(b)(7) and 19. (ECF No. 27 at 4.) After the Parties fully briefed the matter, and a magistrate judge issued a report and recommendation, the Court denied Harrah's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), but granted the motion to dismiss for failure to join a required party under Rule 12(b)(7). (ECF No. 62.) Plaintiffs timely appealed the dismissal decision. (ECF No. 64). Following full briefing and

oral argument, the Parties engaged in arm's-length settlement negotiations and mediation, which resulted in settlement of the case. (ECF No. 75.)

## II.    ARGUMENT AND ANALYSIS

The request for fees, costs and service or incentive awards is fair and reasonable under the applicable legal standards given: (A) the negotiated fee is entitled to deference; (B) the requested fee is supported by applicable legal authorities; (C) the costs are reasonable and necessary; and (D) certain Plaintiffs provided substantial services on behalf of the class justifying incentive awards. The Court, therefore, should grant Plaintiffs' Counsels' unopposed motion.[1]

## A.    An Agreed-Upon or Negotiated Fee Is Entitled to Deference.

Federal courts encourage litigants to resolve fee issues by agreement whenever possible. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) ("[W]e encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and

---

[1] Plaintiffs' Counsel filed this matter as a class and collective action, but settled this case in the best interest of its current clients—the 7 named Plaintiffs and 168 opt-in Plaintiffs. While the settlement is not technically a class settlement, class action authorities remain instructive given the nature and posture of the case.

professionally arrive at a settlement as to attorney's fees."). When considering a requested fee award for an FLSA settlement, courts have acknowledged that "the FLSA does not require the Court to conduct 'an in depth analysis unless the unreasonableness of such award is apparent from the face of the documents.'" *Hosier v. Mattress Firm, Inc.*, No. 3:10-CV-294-J-32JRK, 2012 WL 2813960, at *5 (M.D. Fla. June 8, 2012) (quoting *King v. My Online Neighborhood, Inc.*, No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575, at *4 (M.D.Fla. Mar.7, 2007)).

"In determining whether a given fee is reasonable, a court should first ensure that the parties' agreement regarding the proposed fee was not collusive; that is, that fee-negotiations were conducted at arms-length and only after all material terms of the settlement had been agreed upon." *Strube v. Am. Equity Inv. Life Ins. Co.*, No. 6:01-cv-1236-Orl-19DAB, 2006 WL 1232816, at *1 (M.D. Fla. May 5, 2006) (citing *Elkins v. Equitable Life Ins. of Iowa*, No. CivA96-296-Civ-T-17B, 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998)). "If a court so finds, great weight should be given to the negotiated fee in considering whether the fee is appropriate." *Id.* (citing *Johnson*, 488 F.2d at 720); *accord Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) ("In the absence of any evidence of collusion or detriment to the class, the Court should give substantial weight to a negotiated fee amount . . .'" (quoting *Elkins*, 1998 WL 133741, at *34)).

Here, there is no hint of fraud or collusion between the Parties concerning an

attorney's fees award. The fees requested in section 3.2.1 of the Confidential

Settlement Agreement represents 36.63% of the Settlement Fund—lower than the

40% fee amount in Plaintiffs' engagement agreement. *See* Ex. 1 (applicable portion

of engagement agreement). By joining this case, all opt-in Plaintiffs consented to

the terms of the engagement agreement. *See* Ex. 2 (representative opt-in form).

During settlement negotiations, Plaintiffs' Litigation Committee approved the

attorneys' fees and costs requested only after the Parties negotiated the settlement

amount for Plaintiffs. (*See* Ex. 3, Bundy Decl. ¶¶ 6-7.) Given these facts, Plaintiffs'

Counsel respectfully request that this Court place great weight on the negotiated

attorneys' fees and costs.

**B.     The Fee Request Is Fair and Reasonable Based on Applicable Legal Standards in Common Fund Cases.**

The United States Supreme Court "has recognized consistently that a litigant

or a lawyer who recovers a common fund for the benefit of persons other than

himself or his client is entitled to a reasonable attorney's fee from the fund as a

whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Attorneys in cases

"in which a common fund is created are entitled to compensation for their services

from the common fund, but the amount is subject to court approval." *Camden I

Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (citing Fed. R.

Civ. P. 23(e)). In such cases, the court must determine the reasonableness of the

fee requested. *Barber v. Kimbrell's, Inc*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978).

Reasonableness "essentially boils down to two competing methods of calculation: the lodestar method[2] and the 'percentage of recovery' or ('percentage of the fund' method)." *See, e.g., In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009); *see also Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 717 (S.D. W. Va. 2009).

While lodestar is an appropriate method for determining the reasonableness of fees in FLSA collective actions, counsel are seeking a percentage of the fund in part because a lodestar fee would overwhelm the Settlement Fund. We are also mindful "other districts within this Circuit[] and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees." *Barber*, 577 F.2d at 261. "One of the main advantages of using a percentage of fund method is that it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorney." *Loudermilk Servs., Inc.*, 623 F. Supp. 2d at 717-18 (internal quotations omitted).

In *Barber*, this circuit's seminal case evaluating a fee petition under the percentage of the fund approach, the Fourth Circuit approved the use of the factors in *Johnson v. Ga. Hwy. Express*. *See Barber*, 577 F.2d at 226 n. 28. The *Johnson* factors are:

---

[2] Using the lodestar method, the Court multiplies the number of hours worked by a reasonable hourly rate, and, if appropriate, adds a "multiplier." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 260.

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* These "factors must be considered by district courts in this circuit in arriving at a determination of reasonable attorney's fees in a case where such determination is necessary." *Id.* This Court's determination of a reasonable fee award "must be accompanied by detailed findings of fact with regard to the factors considered." *Id.* Such determination will not be overturned on appeal "unless under all of the facts and circumstances it is clearly wrong" because "the allowance of attorneys' fees is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered." *Id.* (internal quotations omitted).

Here, Plaintiffs' Counsels' fee request, after deducting the amount of reimbursable costs, totals about 36.63% of the settlement. This request is in line with the typical award in common fund cases particularly given Plaintiffs' counsel took on this novel issue and handled the matter through appeal before achieving a successful result. As further demonstrated below, therefore, the Court should grant Counsel's motion for fees when evaluating the *Johnson* factors here.

8

### 1. Time and Labor Required (1st *Johnson* Factor).

The first *Johnson* factor considers time spent. "Although hours claimed or spent on a case should not be the sole basis for determining a fee, they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717 (citation omitted). Here, Plaintiffs' Counsel spent more than 1,330 hours on this case, which would create a lodestar significantly more than 36.63% of the settlement fund. *Compare* Ex. 5[3] (un-redacted invoices totaling $455,407.50 (representing 55.2% of the fund) *with* Confidential Settlement Agreement ¶ 3.2.1.2, (ECF No. 76); (*See* Ex. 3, Bundy Decl. ¶¶ 8-9; Ex. 4, Ellis Decl.). These hours do not include hundreds of additional hours necessary to bring this settlement to a conclusion. Accordingly, a lodestar analysis confirms the reasonableness of 36.63% of the settlement. The time and labor factor supports the requested fee award in this case.

### 2. Novelty and Difficulty of the Issues (2nd *Johnson* Factor).

Claims under the FLSA, "typically involve complex mixed questions of fact and law," *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 743 (1981).

---

[3] As time sheets reflect, counsels' work included: researching for and preparing the complaint and amended complaint; interviewing and communicating with class members; reviewing documents; creating a website to reach over 100 Plaintiffs and Opt-Ins; researching and drafting pleadings, motions, responses, and other documents on numerous issues in the case, including on appeal and protecting Plaintiffs from Harrah's motion for attorney's fees; appearing for mediation in person, including a settlement conference; and participating in subsequent settlement negotiations with Harrah's which involved the review of millions of data points to determine the fairness and amount of a settlement.

Among FLSA cases, the most complex type is the "hybrid" action, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to § 216(b). *Hart v. RCI Hosp. Holdings, Inc.*, 09 Civ. 3043 (PAE), 2015 WL 5577713, at *15 (S.D.N.Y. Sept. 22, 2015) (finding that the complexity of the action in "hybrid" cases supported attorneys' fee request) (citations omitted)); *Snead v. Interim HealthCare of Rochester, Inc.* No. 6:16-CV-06550 EAW, 2018 WL 1069201, at *9-10 (W.D.N.Y. Feb. 26, 2018) (finding that the relative complexity of a hybrid case warranted the requested attorneys' fee award) (citations omitted). Analogous considerations apply in this hybrid case.

Moreover, the novelty and complexity of the issues in this case easily support the fee requested. Few lawyers are willing to collective actions on behalf of employees because of the uniqueness of the law and the resources needed to pursue an action. Far fewer are willing to handle class actions involving novel legal issues. Accordingly, this *Johnson* factor warrants approval of the fee award.

### 3. Skills to Perform Legal Services Properly/Experience, Reputation, and Ability of the Attorneys (3rd and 9th *Johnson* Factors).

The standing and prior experience of Plaintiff's Counsel are relevant in considering fees. As *Johnson* explains:

> [m]ost fee scales reflect an experience differential with the more experienced attorneys receiving larger compensation. An attorney specializing in [the subject matter] cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his

10

experience.

488 F.2d at 718-19.

Here, Plaintiffs were represented by experienced and knowledgeable attorneys, with what they believe are excellent credentials and standing in the legal profession. As their biographies (attached as Ex. 6) detail, each of the lead counsel has considerable class action experience—for plaintiffs and defendants—in addition to other labor and employment litigation. The efforts of Plaintiffs' Counsel in concluding this litigation confirm the experience and ability of the attorneys involved. The competence of Plaintiffs' Counsel satisfies the Third and Ninth *Johnson* factors.[4]

**4.    The Amount Involved and Results Achieved (8th *Johnson* Factor).**

"In a common fund case, . . . the [] *Johnson* factor [regarding] the amount involved and the results obtained [] may be given greater weight when, as in this case, the trial judge determines that the recovery was highly contingent and that the

---

[4] Moreover, the professional standing and expertise of opposing counsel also is an important consideration and "should be weighed in determining the fee, because such standing reflects the challenge faced by plaintiffs' attorneys." *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005); *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) (citation omitted) (stating that "in assessing quality, the Court has considered the quality of the *opposition* as well as the standing of plaintiff's counsel."). Here, Cozen O'Connor LLP, a firm that ranks among the most prominent and skilled law firms not only in North Carolina, but also nationally, represented Harrah's. Cozen is experienced, respected, and skilled.

efforts of counsel were instrumental in realizing recovery on behalf of the class."
*Brown v. Phillips Petroleum, Co.*, 838 F.2d 451, 456 (10th Cir. 1988); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The result achieved is a major factor to consider in making a fee award."). The amount involved and the results achieved support the award Plaintiffs' Counsel request because the settlement reached "f[e]ll within the range of reasonable recovery in this case, considering the risks and uncertainties of continued litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066-JEC, 2008 WL 11234103, at *4 (N.D. Ga. March 3, 2008).

Here, the results obtained are noteworthy. Through Plaintiffs' Counsels' aggressive prosecutorial efforts, a settlement has been reached with Harrah's that provides significant monetary relief for Plaintiffs even after the case was dismissed and on appeal. Considering the risks and uncertainties in continued litigation, the results achieved fully support the requested fee. Furthermore, this litigation forced Harrah's to change its policies, eliminating the illegal wage practices. These policy changes not only benefited Plaintiffs directly, but also affected the industry in which Plaintiffs work.

### 5. Whether the Fee Is Fixed or Contingent (6th *Johnson* Factor)

Courts have consistently recognized the attorneys' contingent fee risk should be "a major factor" in determining the fee award. *Schwartz*, 2005 WL 3148350, at

*24; *see also Columbus Drywall*, 2008 WL 11234103, at *3 (quoting *Ressler*, 149 F.R.D. at 656). ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.") Such an award "helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd* 899 F.2d 21 (11th Cir. 1990) (internal citation omitted); *accord In re Prudential-Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994) (same).

Here, Plaintiffs' Counsel understood they were embarking on complex, and certainly expensive and lengthy litigation because this case presented novel issues under the FLSA and state law. Thus, the contingent attorneys' fee arrangement in this case "weighs in favor of the requested attorneys' fees award, because such a large investment of money and time places incredible burdens upon law practices and should be appropriately considered." *In re Thornburg Mortg., Inc. Secs. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012) (citation omitted).

### 6. Preclusion of Other Employment (4th *Johnson* Factor).

"This guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the

representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718. The "substantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund." *Columbus Drywall*, 2008 WL 11234103, at *2.

Here, Plaintiffs' Counsel have been precluded from devoting time to other matters because of the significant amount of time required by this case. Given the relatively small size of Plaintiffs' Counsels' law firms, and the time necessary to litigate this matter, the preclusion of other employment is particularly relevant. *See Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2010 WL 10959222, at *4 (N.D. Ala. Apr. 27, 2010), *aff'd* 668 F.3d 1233 (11th Cir. 2011) ("Class Counsel's firm is a small law firm. As discussed above, they have been required to increase their staffing . . . [thus, their] involvement in this matter has necessarily limited the time and resources that they can devote to other matters over the period of this litigation . . . This factor weighs in favor of an increase of the fee from the benchmark."); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) (same).

### 7. The Undesirability of the Case (10th *Johnson* Factor)

The tenth *Johnson* factor contemplates that a decision to undertake a certain case may not be "pleasantly received by the community or his contemporaries.

This can have an economic impact on his practice which can be considered by the Court." 488 F.2d at 719. Many in the public view class actions with disdain—as a means of obtaining attorneys' fees instead of meaningful relief for the class. Thus, Plaintiffs' Counsel faced a reputational risk.

Moreover, courts recognize that the financial burden and time demands of complex class actions make them in some sense "undesirable." *Garza v. Sporting Goods Props., Inc*., 155 F.R.D. 552, 572 (E.D. La. 1993). As noted, this case has provided no immediate or guaranteed income and carried substantial risk. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008) ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."). The prospect of expending significant time and costs with no assurance of payment, to litigate a case against well-represented defendants, would deter many lawyers from assuming representation. Thus, the "undesirable aspects of the litigation tend to warrant a higher percentage of the fund." *Columbus Drywall*, 2008 WL 11234103, at *4.

Finally, given the Tribe's immunity defense presented substantial hurdles to recovery, there was substantial risk that Plaintiffs, and Plaintiffs' Counsel, would recover nothing in the litigation. The foregoing risks must be assessed as they existed at the time counsel undertook the case and not in light of the settlement

achieved. *See, e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (holding that the riskiness of a case must be judged *ex ante* not *ex post*). Therefore, Plaintiffs' Counsel knowingly undertook a significant risk in prosecuting this case, and this, too, supports the fee request. *See Omnivision*, 559 F. Supp. 2d at 1047 (noting that nationwide, plaintiffs have "won only three of eleven such cases to reach verdicts since 1996").

### 8. The Customary Fee (5th and 12th *Johnson* Factors).

With regard to these factors, *Johnson* instructed not only that "[t]he customary fee for similar work in the community should be considered," but also that "[t]he reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit." 488 F.2d at 718, 719. To that end, "[t]he 'customary fee' in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis." *Ressler*, 149 F.R.D. at 654. Moreover, "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d at 774-75.

Courts routinely award attorneys' fees based on a percentage fee approach in hybrid settlements such as this involving both an FLSA collective action and a Rule 23 class action. Considering this same backdrop, "the Eleventh Circuit has

stated that the majority of common fund fee awards fall between 20% and 30% of the fund, and as a general rule the uppermost limit of recovery should be 50% of the fund." *Strube v. Am. Equity Inv. Life Ins. Co.*, 2006 WL 1232816, at *2 (citing *Camden I*, 946 F.2d at 774-75).[5] Under a common fund analysis, courts consider both monetary relief and any additional non-monetary relief. *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 WL 375432, at *1 (S.D. Ill. Jan. 31, 2014).

In this case, Plaintiffs' Counsel request an award of attorneys' fees totaling 36.63% of the common fund. While this percentage is nominally higher than 30% threshold that the Eleventh Circuit determined is common, it is certainly justified considering the risk inherent in pursuing a novel legal issue in taking the matter on appeal and in achieving a substantial settlement after the case had been dismissed. Moreover, the requested fee amount is significantly lower than the 50% upper fee limit recognized by the Eleventh Circuit.

The reasonableness of the fee is particularly apparent when compared to the lodestar. (*See* Ex. 3, Bundy Decl. ¶¶ 8-9.) The hourly rates that Plaintiffs' Counsel applied in calculating the lodestar are comparable to what other lawyers charge for

---

[5] *See also Johnson v. Brennan,* No. 10 Civ. 4712(CM), 2011 WL 4357376 *18-19 (S.D.N.Y. Sept. 16, 2011) (stating that "public policy favors a common fund attorneys fee approach" in wage and hour class actions, finding a fee award of 33 1/3% of total settlement fund was reasonable.); *In Re: Milos Litigation*, No. 08 Civ. 6666(LBS)(KNF), 2011 WL 6015705, at *2 (S.D.N.Y. Sept. 8, 2011) (33 1/3%); *Williams v. Aramark Sports*, LLC, Civil Action Nos. 10-1044, 10-1547, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (33 1/3%).

similar work. (Ex. 4, Ellis Decl.) Even without a lodestar multiplier,[6] the lodestar amount ($455,407.50 representing 55.2% of the fund) would significantly exceed the amount of attorneys' fees and costs requested from the common fund under the settlement. (*See* Ex. 3, Bundy Decl. ¶¶ 8-9.) A lodestar analysis, therefore, further demonstrates the reasonableness of the requested fee.

### 9. Time Limitations Imposed by the Case (7th *Johnson* Factor).

"Priority work that delays the lawyer's other legal work is entitled to some premium." *Johnson*, 488 F.2d at 718. Here, given the burden of litigating an FLSA collective action on behalf of almost 200 individuals, as well as Harrah's' vigorous defense, this case has been active since its inception. This litigation caused Plaintiffs' Counsel to delay completion of legal work for other clients. (*See* Ex. 3, Bundy Decl. ¶ 10.) And, the fact that the statute of limitations does not toll for the Plaintiffs' when the Complaint is filed in FLSA cases increased the urgency to quicken the pace of litigation. This factor supports the requested fee award.

---

[6] *Cf In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 265 (noting that courts "'have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee'" (quoting *Jones v. Dominion Res. Servs.,* 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009))); *In re Enron Corp. Securities, Derivatives, and ERISA Litigation*, 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008) ("'[M]ultiples from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001))).

**10.    Nature and Length of Clients Relationship (11th *Johnson* Factor).**

As the *Johnson* court explained with respect to this the eleventh factor, "[a] lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office. The Court may appropriately consider this factor in determining the amount that would be reasonable." 488 F.2d at 719. "Sometimes counsel will have a preexisting relationship with the class representatives or members that might warrant a discounted fee in light of the past and future profitability of the ongoing relationship." *Columbus Drywall*, 2008 WL 11234103, at *4. Prior to undertaking this representation, however, Plaintiffs' Counsel had no relationship with any of Plaintiff, nor is an ongoing professional relationship currently contemplated. Thus, counsel undertook and persevered in this case without any incentive that it might generate future and ongoing legal work from Plaintiffs or the Opt-Ins. "In sum, there is no pre-existing relationship or prospect of future business that might tend to warrant a lower percentage." *Id.*

**C.    This Court Should Approve Plaintiffs' Counsel's Request for Reimbursement of Litigation Costs and Expenses.**

Plaintiffs' Counsel also request reimbursement for the reasonable and necessary expenses that they advanced to prosecute this case. An award for reasonable litigation costs and expenses is warranted where, as here, counsel's efforts result in the creation of a common fund for the class. *See, e.g.*, *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008)

("Under the common fund doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." (citation and internal quotation marks omitted)); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) (holding that "[t]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund."). In fact, "[P]laintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class." *Waters v. Intern. Precious Metals Corp.*, 190 F. 3d 1291, 1298 (11th Cir. 1999) (citing *Agent Orange Products Liability Litig.*, 611 F. Supp. 1296, 1314 (E.D.N.Y. 1985), *modified on other grounds*, 818 F. 2d 226 (2d Cir. 1987)); *Ressler*, 149 F.R.D. at 657 (finding that the full amount of costs and expenses that were requested by class counsel "were reasonable and necessary to obtain the settlement reached in [the] case").

Here, Plaintiffs' Counsel request reimbursement of $11,306.19, less than 2% of the Common Fund, for reasonable expenses incurred. Plaintiffs' Counsel seek the reimbursement of a reasonable and necessary amount of litigation costs and expenses, including renting space for meeting with Plaintiffs; photocopies;

documents prepared for the Court's consideration; filing and court admission fees; and service of process. (*See* Ex. 3, Bundy Decl. ¶ 11.)[7]  Accordingly, Plaintiffs' Counsel respectfully submit their requested and agreed upon award of costs and expenses is eminently reasonable and necessary for the successful prosecution of this action. The reimbursable costs are inclusive of the request for 38% of the settlement fund.

**D.   Plaintiffs Are Entitled to Service or Incentive Payments.**

In addition to their individual awards under the allocation formula, eleven Plaintiffs are applying for additional modest payments totaling $16,000 in recognition of the services they rendered on behalf of others as Plaintiffs representatives and/or Litigation Committee Members. These eleven individuals include: (1) Charlotte Humble ($1,000.00); (2) Sharon Isackson ($1,000.00; (3) Justin Humble ($1,000.00); (4) Trevor Simmons ($1,000.00; (5) Margaret

---

[7] Courts have held that it is beyond question that such expenses are properly chargeable to the settlement fund. *See, e.g.*, *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (finding that non-duplicative charges for "photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel" were appropriate); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (D. Fla.1988); ("In addition, plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action. In summary, these expenses include the necessary costs associated with any action: travel, depositions, filing fees, postage, telephone, and copying." (citation omitted)).

Hoover ($1,000.00); (6) Jennifer Spaty Browning ($1,000.00; (7) Belinda King ($3,000.00); (8) Sean Jones ($2,000.00); (9) Brian Estes ($2,000.00); (10) James Burkett, Jr ($1,000.00); and (11) Tamara Thompson ($2,000.00). (Confidential Settlement Agreement ¶ 3.2.1.2, ECF No. 76.) Like the application for attorneys' fees and costs, Harrah's does not oppose these awards. *Id.*

Courts routinely approve service or incentive payments "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Hosier*, 2012 WL 2813960, at *5 (citations omitted); *accord Ingram*, 200 F.R.D. at 694 ("[Courts] routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."); *Camp v. Progressive Corp.*, No. Civ.A. 01-2680, 2004 WL 2149079, at *8 (E.D. La. Sept. 23, 2004) (same); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (same).

"Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." *Hosier*, 2012 WL 2813960, at *5 (citing *Ingram*, 200 F.R.D. at 694) (approving service payments for certain plaintiffs and opt-in plaintiffs given their time and effort and the inherent risks); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM,

2011 WL 6846747, at *3 (M.D. Fla. Dec. 29, 2011) (approving incentive compensation award of $10,000 to class representatives given they expended substantial time and effort pursuing a recovery for the benefit of absent class members).

Here, the eleven Plaintiffs named above have actively participated in the case, demonstrating a strong interest in recovering the unpaid compensation owed to Plaintiffs. They have spent significant time searching for and producing records and documents, encouraging other Plaintiffs to join, and/or participating in extensive settlement negotiations. (*See* Ex. 3, Bundy Decl. ¶¶ 12-14); *Cf. Palmer v. Dynamic Recovery Solutions, LLC*, No. 6:15-cv-59-Orl-40KRS, 2016 WL 2348704, at *9 (M.D. Fla. May 4, 2016). In light of these eleven Plaintiffs' willingness to devote their time and energy to prosecuting this action, the requested service incentive payments are not only justified, but they are also reasonable in consideration of the overall benefit conferred on the Plaintiffs.

## III.    CONCLUSION

Based on the foregoing, Plaintiffs' Counsel respectfully request that the Court approve the agreed-upon, proposed award of attorneys' fees and costs in the amount of 38% of the settlement fund, and the service incentive payments in the total amount set forth in the Confidential Settlement Agreement submitted under seal—none of which Harrah's disputes.

On this 1st day of May, 2020.                    Respectfully submitted,


  /s/Thomas R. Bundy, III
Todd Ellis                                       Leslie J. Bryan*
North Carolina Bar No. 22039                     Lawrence & Bundy LLC
Law Office of Todd Ellis, P.A.                   1180 West Peachtree Street, N.W.
7911 Broad River Road, Suite 100                 Suite 1650
Irmo, South Carolina 29063                       Atlanta, Georgia 30309
(803) 732-0123                                   (404) 400-3350
todd@toddellislaw.com                            leslie.bryan@lawrencebundy.com

Thomas R. Bundy III*                             Lovita Tandy*
Lawrence & Bundy LLC                             Tandy Legal
8115 Maple Lawn Blvd., Suite 350                 4480 South Cobb Dr., Suite H-315
Fulton, Maryland 20759                           Smyrna, Georgia 30080
240-786-4998 (direct)                            770-274-6179
thomas.bundy@lawrencebundy.com                   ltandy@tandylegal.com

**Attorneys for Plaintiffs**

**\***Admitted pro hac vice

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 1, 2020, I electronically filed the

foregoing with the Clerk of Court by using the CM/ECF system, which will

send notice of electronic filing to the following counsel of record:

Tracy L. Eggleston, NC Bar # 18471
COZEN O'CONNOR
301 S. College Street, Suite 2100
Charlotte, NC 28202
Telephone: 704-376-3400
Facsimile: 704-334-3351
E-mail: TEggleston@cozen.com

Jennifer T. Williams, FL Bar #174203
Susan N. Eisenberg, FL Bar #600393
COZEN O'CONNOR
200 South Biscayne Blvd., Suite 3000
Miami, FL 33131
Telephone: 305-704-5944
Facsimile: 786-220-0207
jtwilliams@cozen.com
seisenberg@cozen.com

*Attorneys for Defendant*

s/ Thomas R. Bundy III
