**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:17-cv-00262-MR-WCM**

| | | |
|---|---|---|
| **CHARLOTTE HUMBLE, SHARON ISACKSON, JUSTIN HUMBLE, TREVOR SIMMONS, MARGARET HOOVER, BELINDA KING, and JENNIFER SPAYTH BROWNING, individually and on behalf of all others similarly situated,** | ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **SUGGESTION OF DISPOSITION** |
| **HARRAH'S NC CASINO COMPANY, LLC, d/b/a Harrah's, Harrah's Cherokee Valley River Casino, and Harrah's Cherokee Casino Resort** | ) ) ) ) ) ) | |
| **Defendant.** | ) ) | |
| _____ | ) | |

  **THIS MATTER** is before the Court on the parties' Joint Motion for an

Order Indicating Approval of a Confidential Settlement and Dismissal of the

Case with Prejudice [Doc. 77] and Plaintiffs' Counsel's Supplemental Motion

for Attorney Fees Costs and Service Awards [Doc. 85].

## I. BACKGROUND

  On September 18, 2017, the Plaintiffs filed a Collective and Class

Action Complaint against Defendant Harrah's NC Casino Company, LLC,

("Defendant Harrah's Casino") for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, <u>et seq.</u>, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, <u>et seq.</u> [Doc. 1]. On November 2, 2017, the Plaintiffs filed an Amended Collective and Class Action Complaint ("Amended Complaint") to assert additional factual allegations in support of their claims. [Doc. 20]. On November 16, 2017, Defendant Harrah's Casino filed a motion to dismiss Plaintiffs' Amended Complaint under Rules 12(b)(1) and 12(b)(7). [Doc. 26]. The parties fully briefed this motion. [Docs. 27, 34, 40].

On June 1, 2018, the Magistrate Judge filed a Memorandum and Recommendation with respect to the motion to dismiss. [Doc. 56]. He recommended that Defendant's motion under Rule 12(b)(1) be denied because the Court has subject matter jurisdiction over Plaintiffs' claims but recommended that Defendant's motion under Rule 12(b)(7) be granted for failure to join Tribal Casino Gaming Enterprise ("TCGE") as a necessary party under Rule 19. [<u>Id.</u>]. The Plaintiffs and the Defendant filed objections to the Memorandum and Recommendation [Docs. 57, 58] and their respective replies [Docs. 59, 60]. On September 28, 2018, the Court entered an Order overruling the parties' objections and accepting the Magistrate Judge's recommendation that the Defendant's motion to dismiss be granted

under Rule 12(b)(7). [Doc. 62]. On the same day, the Clerk entered Judgment in accordance with the Court's Order. [Doc. 63]. On October 11, 2018, the Plaintiffs filed a notice of appeal from the Order granting Defendant's motion to dismiss to the United States Court of Appeals for the Fourth Circuit. [Doc. 64]. The parties fully briefed the appeal and engaged in oral argument before the Fourth Circuit. [Doc. 77 at 4].

On February 6, 2020, the parties engaged in settlement negotiations with a mediator. [Id.]. The parties continued those negotiations into the early morning hours of February 7, 2020, at which point they agreed to settlement terms. [Id. at 5-7].

On February 13, 2020, the parties filed a joint motion in the Fourth Circuit requesting that their appeal be held in abeyance pending this Court's review of the settlement and entry of an order approving the settlement agreement. [Id. at 6; Doc. 77-5]. On February 19, 2020, the Fourth Circuit granted the parties' joint motion and placed the case in abeyance pending the disposition of matters before this Court. [Doc. 75; Doc. 77-6].

On March 31, 2020, the parties filed the present Joint Motion for an Order Indicating Approval of a Confidential Settlement and Dismissal of the Case with Prejudice. [Doc. 77]. On the same date, the Plaintiffs filed the present Unopposed Motion for Attorneys' Fees, Costs, and Service Awards

requesting $302,193.81 in attorneys' fees, $11,306.19 in costs, and $16,000 service awards for the eleven individuals who served as Plaintiffs' Representatives or served on the Plaintiffs' Litigation Committee. [Doc. 79; Doc. 78 at 6]. According to the representation agreement that was formed between Plaintiffs' Counsel and the Plaintiffs prior to this lawsuit, Plaintiffs' Counsel are entitled to "33% of the gross settlement" in the event of a settlement and "[i]n the event of an appeal . . . would be entitled to 40% of the gross judgment." [Doc. 85-1 at 2]. The fees sought by Plaintiffs' Counsel here would constitute roughly 36.63% of the total settlement amount. [Doc. 85 at 6].

On May 1, 2020, the Plaintiffs filed a Supplemental Motion for Attorneys' Fees, Costs and Service Awards, which updated the Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards with specific information regarding the amounts sought. [Doc. 85].

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 62.1(a)(3), "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." If the district court states that it

4

would grant the motion, the movant "must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1." Fed. R. Civ. P. 62.1(b). The court of appeals then has the discretion to remand the case for further proceedings. Fed. R. App. P. 12.1(b).

## III. DISCUSSION

The parties seek an order indicating that this Court would approve the agreement between the parties settling the Plaintiffs' FLSA claims if the Fourth Circuit remanded the case for that purpose. [Doc. 77].

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). While "[p]arties are typically permitted, and often encouraged, to reach private settlements[,]" Baker v. Dolgencorp, Inc., 818 F.Supp.2d 940, 942 (E.D. Va. 2011), FLSA cases are treated differently. See, e.g., Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982). Because "Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees . . . the FLSA's provisions are mandatory and are not subject

to bargaining, waiver, or modification by contract or settlement" absent approval from a court of competent jurisdiction or the Secretary of Labor. Robinson v. Harrison Transport. Servs., No. 5:15-CV-298-F, 2016 WL 3647616, at *1 (E.D.N.C. June 30, 2016); 29 U.S.C. § 216(b)-(c).

The Eleventh Circuit explained the reasoning behind prohibiting private FLSA settlements without judicial or executive approval in Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1354 (11th Cir. 1982):

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation. But to approve an "agreement" between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA.

6

"The primary focus of the court's inquiry in determining whether to approve the settlement of a collective action under the FLSA is 'on ensuring that an employer does not take advantage of its employees in settling their claim for wages.'" McLaurin v. Prestage Foods, Inc., No. 7:09-CV-100-BR, 2011 WL 13146422, at *2 (E.D.N.C. Nov. 9, 2011) (quoting Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 719 (E.D. La. 2008)). "In essence, the Court must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." Collins, 568 F. Supp. 2d at 719-20 (citing 29 U.S.C. §§ 206, 207). When determining if an FLSA settlement warrants approval, courts generally consider "(1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees." Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 407–08 (D. Md. 2014).

## A.    FLSA Issues in Dispute

To begin, there are issues in dispute here.  The Defendant has asserted that there was no FLSA violation here because the Plaintiffs were fully compensated for every hour that they worked.  [Doc. 77 at 11-12]. Moreover, the Defendant moved to dismiss this matter on the basis that the

Plaintiffs' actual employer, TCGE, was a required party under Rule 12(b)(7) that could not be joined due to its tribal sovereign immunity. [Doc. 27 at 4]. The Court agreed with the Defendant and dismissed the Plaintiffs' claims on that basis. [Doc. 62]. The Plaintiffs appealed that conclusion to the Fourth Circuit, which has yet to directly address the issue of tribal sovereign immunity in the context of an FLSA claim. [Id. at 8]. Given those dispute issues, it is not conclusively clear at this point that the Plaintiff or the Defendant would ultimately prevail in this action if it were to continue. "[S]uch uncertainty confirms the existence of a bona fide dispute as to the extent of Defendants' FLSA liability (if any) in this case." Saman v. LBDP, Inc., No. DKC 12–1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013).

### B. Fairness and Reasonableness of the Settlement

The Court may approve a class settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." Beaulieu v. EQ Indus. Servs., Inc., No. 5:06–CV–00400–BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158–59 (4th Cir. 1991); In re

8

Mid–Atlantic Toyota Antitrust Litig., 564 F. Supp. 1379, 1383–84 (D. Md.1983)).

In assessing the "fairness" of a proposed settlement, the Court should consider: (a) the posture of the case at the time the settlement was reached, (b) the extent of the discovery conducted by the parties, (c) the circumstances surrounding the settlement negotiations, and (d) counsel's experience in the area of class action litigation.  Jiffy Lube, 927 F.2d at 159; see also Latham v. Branch Banking & Tr. Co., No. 1:12–cv–00007, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014) (noting district courts have "generally considered the fairness factors" under Rule 23(e) when evaluating the fairness of a collective action settlement under the FLSA); Saman, 2013 WL 2949047, at *3 (listing factors in FLSA case).

In determining the adequacy of a proposed settlement, the Court should consider: (a) the relative strength of the merits of Plaintiffs' case; (b) the existence of any strong defenses or difficulties of proof the Plaintiffs would have to face at trial; (c) the expected duration and cost of additional litigation; (d) the Defendants' solvency and the likelihood of Plaintiffs' recovery on a judgment; and (e) the degree of the Class Members' opposition to the Settlement.  See Jiffy Lube, 927 F.2d at 159; see also Latham, 2014 WL 464236, at *1. The FLSA also requires that the proposed

settlement further the implementation of the FLSA in the workplace. See Robinson v. Harrison Transp. Servs., Inc., 2016 WL 3647616, at *8 (E.D.N.C. June 30, 2016).

Here, the settlement appears to be the result of serious, extensive arm's-length and non-collusive negotiations. The settlement is fair considering the current procedural posture, the circumstances surrounding the settlement negotiations, and the counsel's opinion that this settlement is fair and reasonable. In re Bank of America, 210 F.R.D. 694, 702 (E.D. Mo. 2002) ("Although the Court is not bound by counsel's opinion, their opinion nevertheless is entitled to great weight"); see also Devine v. City of Hampton, Virginia, No. 4:14CV81, 2015 WL 10793424, at *2 (E.D. Va. Dec. 1, 2015).

The Plaintiffs' Amended Complaint requested at least $5,000,000 in compensatory damages in addition to punitive and liquidated damages. [Doc. 20 at 34]. The settlement agreement will pay the Plaintiffs a total of $825,000. [Doc. 78 at 6]. While the amount the Plaintiffs will receive under the settlement agreement may be less than they would have been if they had ultimately prevailed in court, the settlement is adequate in light of the Court's prior dismissal of the Plaintiffs' claims, the issues that the Plaintiffs would face as a class at trial, the cost and time burdens that would come from continuing this litigation. Moreover, no class member has filed an objection

to the proposed settlement, which weighs in favor of the adequacy of the settlement.  See Jiffy Lube, 927 F.2d at 159; see also Latham, 2014 WL 464236, at *1.  The settlement also will further the implementation of the FLSA in the workplace by ensuring compliance with the applicable provisions of the FLSA.  Robinson, 2016 WL 3647616, at *8.  Accordingly, after consideration of the relevant Jiffy Lube factors, the Court finds and concludes that the parties' settlement is reasonable, fair, and adequate and should be approved.

## C.    Reasonableness of Attorney's Fees

According to the representation agreement that was formed between Plaintiffs' Counsel and the Plaintiffs prior to this lawsuit, Plaintiffs' Counsel are entitled to "33% of the gross settlement" in the event of a settlement and "[i]n the event of an appeal . . . would be entitled to 40% of the gross judgment."  [Doc. 85-1 at 2].  Plaintiffs' Counsel requests $302,193.81 in fees and $11,306.19 in costs as part of the settlement agreement, which would constitute roughly 36.63% of the total settlement amount.  [Doc. 85 at 2, 6].

"The FLSA 'contemplates that the wronged employee should receive his full wages plus the penalty without incurring any expenses for legal fees or costs.'"  Poulin v. Gen. Dynamics Shared Res., Inc., 2010 WL 1813497 at *1 (W.D. Va. 2010) (quoting Silva v. Miller, 307 F. App'x 349, 351 (11th Cir.

11

2009)). Accordingly, "the FLSA requires judicial review of the reasonableness of counsel's legal fees to ensure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Id.

Reasonableness "essentially boils down to two competing methods of calculation: the lodestar method[1] and the 'percentage of recovery' or ('percentage of the fund' method)." In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 260 (E.D. Va. 2009) (quoting Jones v. Dominion Res. Servs., 601 F.Supp.2d 756, 758 (S.D. W. Va. 2009)). "While the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases." Id. (citing Jones v. Dominion Res. Servs., 601 F.Supp.2d 756, 758 (S.D.W. Va. 2009); Smith v. Krispy Kreme Doughnut Corp., No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007); In re Microstrategy, Inc., 172 F.Supp.2d 778, 787 (2001); Strang et al v. JHM Mortgage Sec. Ltd. P'ship et al., 890 F.Supp. 499, 502 (E.D. Va. 1995)); see also Manual for Complex Litigation § 14.121 (4th ed. 2004) ( "the vast

---

[1] Under the lodestar method, the Court multiplies the number of hours worked by a reasonable hourly rate and applied a multiplier if appropriate. Id.

majority of courts of appeals . . . permit or direct district courts to use the percentage-fee method in common-fund cases."). Nevertheless, the lodestar method should also be consulted to ensure that the fees sought under the percentage of the fund method are reasonable. In re Neustar, Inc. Sec. Litig., No. 1:14CV885, 2015 WL 8484438, at *7 (E.D. Va. Dec. 8, 2015) (using the lodestar as a cross-check for the percentage method is "the common practice within this Circuit"). Since the Plaintiffs' Counsel has requested a fee based upon a agreed percentage of the recovery, the Court will examine the reasonableness of that percentage and will use the lodestar method as a cross-check.

When assessing the reasonableness of an award of attorneys' fees, courts in the Fourth Circuit consider the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

13

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28 (4th Cir. 1978); see also

Jackson v. Estelle's Place, LLC, 391 F. App'x 239, 243 (4th Cir. 2010

### 1. Time and Labor Expended

Plaintiffs' Counsel has incurred over 1,330 hours on this case. [Doc.

85 at 9; Doc. 85-3 at ¶ 8].[2]  Plaintiffs' Counsel requests $302,193.81 in fees.

[Id.; Doc. 85-3 at ¶¶ 8-9].  This works out to a request for roughly $227 per

hour in fees.  That request is very reasonable considering the $455,407.50

that the Plaintiffs' Counsel assert is supported by their time records, had they

been billing this matter at their regular hourly rates.  [Doc. 85-5].  Moreover,

using the lodestar method as a cross-check confirms the reasonableness of

the request.[3]   As such, the time and labor expended supports the

reasonableness of the requested fee award.

### 2. Novelty and Difficulty of the Questions Raised

This case involves complex questions regarding tribal sovereign

immunity and the FLSA that had yet to be addressed by the Fourth Circuit.

The novelty and difficulty of those questions, the time spent, as well as the

---

[2] This does not include any time that has been incurred bringing this case to conclusion through settlement.  [Doc. 85 at 9].

[3] The Court has previously found that the market rate prevailing in this District is higher than $227 per hour.  In re Wachovia, Civil No. 3:09-cv-00262, 2011 WL 7787962, at *6 (W.D.N.C. Oct. 24, 2011).  The prevailing market rate has surely increased since that finding was made in 2011.

14

risk taken by the Plaintiffs' Counsel thus supports the reasonableness of the requested fee award. <u>Kirkpatrick v. Cardinal Innovations Healthcare Sols.</u>, 352 F. Supp. 3d 499, 505 (M.D.N.C. 2018) ("[T]he novelty and difficulty of the questions raised weighs in favor of approving the fee because collective counsel had to address procedurally and substantively complex FLSA issues[.]").

### 3. Skill Required to Properly Perform the Legal Services

The novel sovereign immunity issues raised by this case required the Plaintiffs' counsel to exercise significant legal skill. Moreover, it takes substantial ability to shepherd a class action to settlement, particularly when the Defendant has the means to retain sophisticated counsel.[4] As such, this factor supports the reasonableness of the requested fee award.

### 4. Attorneys' Opportunity Costs

Plaintiffs' Counsel assert that the demands of this litigation precluded them from devoting time to other matters. [Doc. 85 at 14; Doc. 85-3 at ¶10]. This factor supports the reasonableness of the requested fee award.

---

[4] The Plaintiffs contend that Cozen O'Connor LLP, counsel for the Defendant, "ranks among the most prominent and skilled law firms not only in North Carolina, but also nationally[.]" [Doc. 85 at 11 n.4].

15

## 5.    Customary Fee for like Work

Within the Fourth Circuit, contingent fees of roughly 33% are common. See, e.g., Kirkpatrick, 352 F. Supp. 3d at 505 (33.39%); Kirven v. Cent. States Health & Life Co. of Omaha, No. CA 3:11-2149-MBS, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015) (33%); Reynolds v. Fid. Investments Institutional Operations Co., Inc., No. 1:18-CV-423, 2020 WL 92092, at *3 (M.D.N.C. Jan. 8, 2020) (33%).  Nevertheless, "[i]n most FLSA cases, it does not make sense to limit fees to 33% of the total settlement."  Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020).  As such, courts have approved contingent fees up to 40% of the total recovery in FLSA actions.  Salinas v. U.S. Xpress Enterprises, Inc., No. 113CV00245TRMSKL, 2018 WL 1477127, at *9 (E.D. Tenn. Mar. 8, 2018) (40%), report and recommendation adopted, No. 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); Mabry v. Hildebrandt, No. CV 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (40%); Brittmon v. Upreach LLC, No. 2:17-CV-219, 2018 WL 7889855, at *1 (S.D. Ohio Nov. 8, 2018) (40%).  In light of the range of fees approved by other courts in similar actions, the Court finds that the Plaintiffs' Counsel's fee request amounting to 36.63% of the common fund is reasonable.  The reasonableness of this request is reinforced by the cross-

check with the lodestar calculation. Accordingly, this factor supports the reasonableness of the requested fee award.

### 6. Attorneys' Expectation at Outset of Litigation

From the outset of the case, the Plaintiffs and Plaintiffs' Counsel understood that a percentage of the recovery would be sought for the fee award in this case. According to the agreement between Plaintiffs' Counsel and the Plaintiffs, Plaintiffs' Counsel are entitled to "33% of the gross settlement" in the event of a settlement and "[i]n the event of an appeal . . . would be entitled to 40% of the gross judgment." [Doc. 85-1 at 2]. This case involved both an appeal and a settlement. As such, the fee request for 36.63% of the total recovery is within the 33% to 40% range that was suggested by the parties' agreement before the outset of litigation.

Moreover, Plaintiffs' Counsel took this case on a contingent basis, knowing that the tribal sovereign immunity issue could completely preclude a recovery. [Doc. 85 at 15]. The decision by counsel to take the case despite that risk, which was apparent at the outset of the litigation, weighs in favor of a considerable fee. Accordingly, this factor supports the reasonableness of the requested fee award.

17

### 7. Time Limitations

This case required particular urgency because the statute of limitations does not toll upon the filing of a complaint in an FLSA action. Rotari v. Mitoushi Sushi, Inc., No. 19-CV-5182 (BMC), 2020 WL 1289589, at *5 (E.D.N.Y. Mar. 18, 2020). Moreover, Plaintiffs' Counsel assert that "[t]his litigation caused Plaintiffs' Counsel to delay completion of legal work for other clients." [Doc. 85 at 14; Doc. 85-3 at ¶10]. As such, this factor supports the reasonableness of the requested fee award.

### 8. Amount in Controversy and Results Obtained

As noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)). Here, the results obtained are noteworthy. Although the case was dismissed and is currently on appeal, the parties' reached a settlement that provides significant monetary relief for the Plaintiffs. The Plaintiffs' Counsel did well to produce such a result given the precarious posture of their case. In addition to providing financial relief to the Plaintiffs, the settlement will also force the Defendant to change its policies, which will eliminate the wage practices that Plaintiffs' assert are unlawful and thus will protect those Plaintiffs who still work for the Defendant.

18

Considering the risks and uncertainties presented by continued litigation, the settlement is a successful result. As such, this factor supports the reasonableness of the requested fee award.

### 9. Experience, Reputation, and Ability of the Attorneys

Plaintiffs' Counsel have extensive experience litigating wage and hour cases, including claims under the FLSA. [Doc. 85-6]. Those attorneys also have significant experience litigating class actions and other labor and employment cases. [Id.]. As such, the Court finds that the experience, reputation, and ability of Plaintiffs' Counsel supports the reasonableness of the requested fee award.

### 10. Undesirability of the Case within the Legal Community

The characteristics of this case show that it was somewhat undesirable. Plaintiff-side FLSA work can be undesirable because often the "potential damages are low and the risk of protracted litigation high." Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020). Class actions also present complicated issues that can sometimes make them "undesirable." In re Shell Oil Refinery, 155 F.R.D. 552, 572 (E.D. La. 1993). Moreover, class action work can negatively impact an attorney's reputation, and therefore can have a negative economic impact on his or her practice. See Johnson v. Georgia

Highway Exp., Inc., 488 F.2d 714, 717–19 (5th Cir. 1974) abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 109 (1989).

This case also presented difficult issues that made it undesirable. As discussed, this case involved novel and difficult legal questions that required significant research. It also was questionable whether the Plaintiffs would ultimately be able to recover given the sovereign immunity issue. In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046–47 (N.D. Cal. 2008). ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."). As such, this factor supports the reasonableness of the requested fee award.

### 11. Relationship between the Attorneys and Clients

Before this litigation, Plaintiffs' Counsel had no professional relationships with any of the Plaintiffs. [Doc. 85 at 19]. Plaintiffs' Counsel do not contemplate maintaining an ongoing professional relationship with any of the Plaintiffs. [Id.]. This factor tends to support the reasonableness of the requested fee award.

### 12. Fee Awards in Similar Cases

As discussed under the fourth factor, courts in the Fourth Circuit typically approve contingent fee awards of roughly 33% of the common fund.

For FLSA settlements, some courts allow contingent fee awards up to 40% of the common fund. Given that range, and the greater recovery that would be available to Plaintiffs' Counsel under the lodestar method, the Court finds that the 36.63% fee request is close to the fee awards that have been approved in other similar cases. As such, this factor supports the reasonableness of the requested fee award.

In sum, the <u>Barber</u> factors all support the requested fee award in this case. Moreover, using the lodestar method as a cross-check confirms the reasonableness of the requested award. [Doc. 85 at 9]. As such, the Court concludes that the requested attorneys' fees are reasonable.

### D. Costs

In addition to attorneys' fees, Plaintiffs' Counsel request $11,306.19 in costs. [Doc. 85 at 2]. Those costs include renting space for meeting with Plaintiffs; photocopies; documents prepared for the Court's consideration; filing and court admission fees; mediator expense; and service of process. [Doc. 85-3 at ¶ 11]. The FLSA specifically allows successful plaintiffs to recover costs including filing fees and printing costs. 28 U.S.C. § 1920; <u>see also</u> <u>Andrews v. Am.'s Living Ctrs, LLC</u>, No. 1:10-CV-00257-MR-DLH, 2017 WL 3470939, at *11 (W.D.N.C. Aug. 11, 2017) (Reidinger, J.) (allowing a plaintiff to recover filing fees under the FLSA). As to other fees, "[t]here is

no doubt that costs, if reasonable in nature and amount, may appropriately be reimbursed from the common fund." In re Microstrategy, Inc., 172 F. Supp. 2d 778, 791 (E.D. Va. 2001). Here, the Court finds that the expenses for which Plaintiffs' Counsel seek reimbursement were reasonable and necessary.

### E.    Service Awards

The settlement agreement provides eleven individuals with additional payments between $1,000 and $3,000 in recognition of the services they rendered as Plaintiffs' Representatives and/or Plaintiffs' Litigation Committee Members. [Doc. 85 at 21-22; Doc. 78 at 6]. The Plaintiff states that those payments total $16,000 and would be distributed as follows: (1) Charlotte Humble ($1,000.00); (2) Sharon Isackson ($1,000.00); (3) Justin Humble ($1,000.00); (4) Trevor Simmons ($1,000.00); (5) Margaret Hoover ($1,000.00); (6) Jennifer Spaty Browning ($1,000.00); (7) Belinda King ($3,000.00); (8) Sean Jones ($2,000.00); (9) Brian Estes ($2,000.00); (10) James Burkett, Jr ($1,000.00); and (11) Tamara Thompson ($2,000.00). [Doc. 85 at 21-22; Doc. 78 at 6]. No one has objected to that request.

"At the conclusion of a successful class action case, it is common for courts, exercising their discretion, to award special compensation to the class representatives in recognition of the time and effort they have invested

22

for the benefit of the class." Smith v. Krispy Kreme Doughnut Corp., No. 1:05CV00187, 2007 WL 119157, at *4 (M.D.N.C. Jan. 10, 2007) (citation omitted); Edelen v. Am. Residential Servs., LLC, No. DKC 11-2744, 2013 WL 3816986, at * 16 (D. Md. July 22, 2013) ("Incentive payments to class representatives have been awarded in both FLSA collective actions and Rule 23 class actions."); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001).

The eleven individuals for whom service awards are requested spent significant time producing records and documents, communicating with interested parties and other Plaintiffs, and participating in settlement negotiations. Accordingly, the Court finds that the service payments detailed in the settlement agreement are justified and reasonable. As such, the Court would grant Plaintiffs' Counsel's request to provide service awards as described in the settlement agreement.

## IV. CONCLUSION

Upon review of the parties' settlement agreement, the Court concludes that the proposed settlement resolves issues in dispute, fairly and

adequately settles those issues, and provides for reasonable attorneys' fees. The Court further concludes that the attorneys' fees, costs, and service awards detailed in that settlement are reasonable. Accordingly, the Court concludes under Federal Rule of Civil Procedure 62.1 that it would approve the parties' proposed settlement if the Fourth Circuit were to remand the case for that purpose. The parties are directed to notify the Clerk of the Court of Appeals for the Fourth Circuit as required by Federal Rule of Civil Procedure 62.1(b) and Federal Rule of Appellate Procedure 12.1(a).

Signed: May 21, 2020

Martin Reidinger
United States District Judge