IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:17-cv-00262-MR-DLH

| | |
|---|---|
| **CHARLOTTE HUMBLE, SHARON ISACKSON, JUSTIN HUMBLE, TREVOR SIMMONS, MARGARET HOOVER, BELINDA KING AND JENNIFER SPAYTH BROWNING,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**HARRAH'S NC CASINO COMPANY, LLC, d/b/a Harrah's, Harrah's Cherokee Valley River Casino, and Harrah's Cherokee Casino Resort,**<br><br>Defendant. | **JOINT MOTION FOR A FINAL ORDER APPROVING SETTLEMENT, DISMISSING OPT-IN PLAINTIFF RICHARD COLE WITHOUT PREJUDICE, AND DISMISSING CASE WITH PREJUDICE** |

Plaintiffs Charlotte Humble, Sharon Isackson, Justin Humble, Trevor Simmons, Margaret Hoover, Belinda King, and Jennifer Spayth Browning, on behalf of themselves and 168 individuals opting into this case (together, "Plaintiffs") and Defendant Harrah's NC Casino Company, LLC, d/b/a Harrah's Cherokee Valley River Casino, and Harrah's Cherokee Casino Resort ("Defendant") (collectively with Plaintiffs, the "Parties"), through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 62.1, the

Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq*. and the August 3, 2020, Order (Doc No. 49-1) of the United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit"), jointly move the Court for a final order approving settlement and dismissing this matter with prejudice. In support thereof, the Parties state as follows:

## I. INTRODUCTION

After lengthy litigation, including arguments before the Fourth Circuit on appeal about the dismissal of this action, the Parties reached an arm's length settlement to which no Plaintiff objected. This Court conditionally approved the Parties' resolution and the Fourth Circuit remanded the case for a final determination on the settlement. Consistent with the Court's reasons in its Suggestion of Disposition (ECF No. 87), and for reasons detailed below, the Parties respectfully move for the entry of a final order that: (1) approves the Settlement Agreement (ECF No. 78) as fair, reasonable and adequate; (2) requires Harrah's to make all payments under the Settlement Agreement within ten (10) business days from the entry of the Final Order; (3) dismisses opt-in Plaintiff Cole, who has zero damages, without prejudice for reasons detailed below; and (4) dismisses this case with prejudice.

2

## II. BACKGROUND AND CASE POSTURE

### A. Factual Background

Defendant is a North Carolina Corporation that, through a contract with the Eastern Band of Cherokee Indians, a federally recognized Indian tribe, oversees the management of Harrah's Cherokee Valley River Casino and Harrah's Cherokee Casino Resort. Plaintiffs are current and former table games dealers, dual-rate dealers, and table game supervisors at the casinos. Plaintiffs sued Defendant as a joint employer alleging that it failed to pay Plaintiffs for thirty (30) minutes of pre-shift work and quarterly "rally meetings." (ECF No. 20.) Plaintiffs also allege supervisors were misclassified, and that Defendant required them to work an extra day each month without pay. (*Id.*) Plaintiffs filed suit, on behalf of themselves and similarly situated individuals, contending that Defendant's actions violated the FLSA, the North Carolina Wage Act, N.C. Gen. Stat. § 95-25.1 *et seq.* ("NCWHA"), and North Carolina common law. (ECF No. 20.) Plaintiffs filed this case as a FLSA collective action and as a class action under state and common law. (*Id.*)

Defendant vigorously disputes the allegations and claims in the Complaint and Amended Complaint. Defendant moved to dismiss the complaints, contending that it did not violate any law; and that the Tribal Casino Gaming Enterprise ("TCGE"), an instrumentality of the Eastern Band of Cherokee Indians ("EBCI"),

(collectively, the "Tribe"), is Plaintiffs' real employer who must be joined in this case, but who cannot be joined because of the Tribe's sovereign immunity.

This Court agreed with Defendant, dismissing Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(7). Plaintiffs timely appealed, on October 12, 2018, the dismissal decision. (ECF No. 64). The Parties fully briefed the appeal and engaged in oral argument before the Fourth Circuit.

**B.    Arm's Length Settlement**

After the Fourth Circuit oral argument, counsel for the Parties engaged in arm's length confidential settlement negotiations. The Parties exchanged significant information as part of the discussions, including payroll and time records, and dates of employment during the relevant time period for each Plaintiff, as well as corporate documents, including policies and documents relating to the activities that give rise to Plaintiffs' claims. The review was extensive. The Parties determined that most of the allegations underlying Plaintiffs' claims occurred between September 16, 2014, and March 27, 2017 (the "Alleged Damages Period") with September 16, 2014 representing the latest potential date in a viable statutory of limitation period based on the date of filing the initial Complaint.

On February 6, 2020, the Parties engaged in voluntary confidential mediation with a mediator who is well versed in the FLSA. Party representatives

4

attended the confidential mediation session. For Plaintiffs, a litigation committee consisting of five individuals attended the confidential mediation.[1] The confidential mediation concluded with a Memorandum of Understanding (the "MOU"), which the Parties executed early the next morning, settling Plaintiffs' state and federal wage and hour claims. The Parties subsequently negotiated the terms of the Settlement Agreement, resolving the case on behalf of the 175 Plaintiffs in this litigation presently.

After studying data for months, a fair methodology for determining how to allocate the settlement funds remaining after payment of any attorney's fees, costs, and/or modest service awards (the "Net Settlement Funds") was developed. The methodology to determine each individual Plaintiffs' share of the Net Settlement Funds (the "Individual Settlement Amount") was developed with input from Plaintiffs' litigation committee. Due to the unavailability of some data reflecting actual hours worked (given the age of the claims and computer system changes), a fair methodology would be based on the number of days worked by each Plaintiff

---

[1] Plaintiffs Sean Jones, Belinda King, Brian Estes, James Burkett, Jr., and Tamara Thompson participated in the mediation and/or subsequent negotiations over the terms of the settlement agreement on behalf of all named and opt-in Plaintiffs whom they represent as duly appointed members of the Plaintiffs' litigation committee pursuant to the engagement agreement between Plaintiffs' counsel and Plaintiffs—relevant portions of which are attached hereto at Exhibit ("Ex.") A. Thus, a decision of the litigation committee's is binding on all Plaintiffs consistent with the terms of their engagement agreement with Plaintiffs' counsel.

5

Case 1:17-cv-00262-MR    Document 88    Filed 08/10/20    Page 5 of 13

during the Alleged Damages Period. Given the differences between Plaintiffs' hourly rates varied only slightly based on (a) location of casino; (b) time during which work was provided; (c) length of service; or (d) position, the methodology multiplies a standard hourly rate (derived from the Net Settlement Funds divided by the total days worked by all Plaintiffs during the Alleged Damages Period) by the days worked for each individual Plaintiff to determine the Individual Settlement Amounts. The Individual Settlement Amounts range from a few hundred dollars for some Plaintiffs to several thousands of dollars for many Plaintiffs. (*See* Ex. B, Bundy Decl. ¶ 5.)

## C. Terms of Settlement

Only those individuals who are named Plaintiffs, or who opted in the case under § 216(b) of the FLSA, will participate in the settlement.[2] Although the settlement is binding on all Plaintiffs when the litigation committee and Defendant executed the agreement, the Parties agreed that each Plaintiff should specifically assent to the settlement allocation by executing tax documents necessary to effectuate the settlement payments.

---

[2] The Parties learned that Plaintiff Porter Ballinger died and his estate is being administered by Tuwanda Ballinger, who is represented by Adam Kerr, Kerr Law, PLLC, PO Box 10941, Greensboro, NC 27404. (*See* Ex. C, Snyder Decl. ¶ 6.) Plaintiff Ballinger's allocated share of the settlement will be paid into his estate and distributed according to the decision of the court presiding over the administration of his estate.

The terms of the settlement are set forth fully in the Settlement Agreement (ECF No. 78), but generally include:

1. The Gross Settlement Amount of $825,000, which shall include payment of (a) the Net Settlement Amount of $495,500, (*id.* § 3.2.1.3), (b) subject to Court approval, eleven Plaintiffs would receive the payment of service awards totaling $16,000, (*id.* § 3.2.1.2), (c) the payment of attorneys' fees totaling $302,193.81 and costs totaling $11,306.19, (*id.* § 3.2.1.1);
2. Defendant will pay for administration of the settlement payment and those funds shall not come from the Gross Settlement Amount;
3. Plaintiffs' release their state and federal wage claims only—there is no general release; and
4. Because some Plaintiffs still work at the casinos, the Settlement Agreement contains standard non-retaliation provisions.

**D.  Posture of the Appeal**

On February 13, 2020, pursuant to Federal Rule of Appellate Procedure 27 and Local Rule 12(d), the Parties filed a Joint Motion to Hold Appeal in Abeyance

Pending District Court Review of Settlement. (App. Doc. No. 43.) The joint motion asked the Fourth Circuit to hold the appeal in abeyance while the Parties jointly moved this Court, pursuant to Federal Rule of Civil Procedure 62.1, for an order indicating that the Court would approve the Settlement Agreement if the Fourth Circuit remanded this case for that specific purpose. (*id.* at ¶ 3.) The Fourth Circuit agreed, ordering on February 19, 2020, that the appeal be held in abeyance and remanded the case for an indicative order on settlement. (App. Doc. No. 44)

**E.     Remand for Indicative Order**

On remand, the Parties jointly moved for an order indicating the Court's approval of the Settlement Agreement. (ECF No. 77.) Plaintiffs' counsel also moved for their attorney's fees and costs and for service awards for eleven Plaintiffs who assisted in the prosecution of this case. (ECF No. 79.) Counsel for Plaintiffs also sent Plaintiffs a letter explaining the relevant settlement terms (including the release) and each Plaintiffs' minimum settlement allocation (which assumed no Plaintiff would opt out of participating in settlement), together with certain tax documents. A representative copy of those materials are included at Ex. D. Each Plaintiff affirmatively accepted the terms of settlement, except opt-in Plaintiff Richard Cole. (Ex. C, Snyder Decl. ¶ 10-12.)

During the data review process in connection with settlement, the Parties learned that the dates of employment for opt-in Plaintiff Richard Cole were

8

different from what he represented on his opt-in form. (*Id.* ¶ 9.) Specifically, Plaintiff Cole stated that Harrah's employed him from June 20, 2012 to January 20, 2015. (Ex. E, Cole opt-in form.) But discovery revealed Harrah's employed Plaintiff Cole from August 6, 2012 to January 15, 2014. (Ex. F (data from Defendant on employment dates).) Thus, Harrah's did not employ Plaintiff Cole during the Damages Period and, based on the applicable limitations period, he incurred no recoverable damages because of Defendant's alleged wage practices.

Counsel for Plaintiff informed Plaintiff Cole about these facts. Counsel asked Plaintiff Cole to provide information demonstrating Defendant's employment data was erroneous. Plaintiff Cole did not respond, however. Counsel for Plaintiff continued to try to reach Plaintiff Cole by telephone and email, but received no response. (Ex. C (Snyder Decl. ¶ 10-12).)

On May 21, 2020, this Court entered a Suggestion of Disposition, holding that the Settlement Agreement was fair, reasonable, and adequate, including Plaintiffs' counsel fee request (including costs and service awards). (ECF No. 86)

**F.    Remand for Final Order**

The Parties jointly notified the Fourth Circuit about this Court's decision and asked the Fourth Circuit to remand the case again for the limited purpose of allowing the Court to enter an order approving settlement. (App. Doc. No. 48-1) During this period, the Parties determined each individual Plaintiff's share of the

9

Net Settlement Fund based on the responses to counsel for Plaintiffs' correspondence. Exhibit G contains each Plaintiff's allocated share of the Net Settlement Fund and the amount of service awards for each Plaintiff whom counsel moved the Court for such an award.

## III. ANALYSIS

Although the Fourth Circuit has not set forth specific guidelines for approval of an FLSA class-action settlement, district courts have followed the guidelines set forth by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See e.g.*, *Kianpour v. Rest. Zone, Inc.*, No. Civ. A. DKC 11-0802, 2011 WL 5375082, at *2 (D. Md. Nov. 4, 2011). In the "context of suits brought directly by employees against their employer . . . to recover back wages for FLSA violations," the district court "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353.

Settling parties seek judicial approval of a proposed settlement to ensure fairness and to give effect to FLSA releases. *Id.* at 1353-55 (holding claims for back wages arising under FLSA may be settled or compromised only with approval of court or Secretary of Labor); *see also Dunham v. Brevard Cty. Sch. Bd.*, 401 So. 2d 888, 889 (Fla. Dist. Ct. App. 1981). The law favors compromise and settlement. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)

(noting "strong judicial policy favoring settlement"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

Consistent with the Court's Suggestion of Disposition, the Parties believe that the terms of the Settlement Agreement are fair, reasonable, and appropriate under the circumstances to resolve Plaintiffs' claims and their counsels' fees and costs. Further supporting the fairness, reasonableness, and appropriateness of settlement is the fact that not one of 175 Plaintiffs objected to the settlement and 174 Plaintiffs expressly consented to settlement.[3] Only opt-in Plaintiff Richard Cole failed to respond.

Counsel for Plaintiffs respectfully request that the Court dismiss opt-in Plaintiff Richard Cole from this matter without prejudice. Based on the produced evidence, he has incurred no recoverable damages under the limitation period. He then failed to respond to his counsel's request for relevant information to substantiate his stated employment dates—dates Harrah's documents demonstrate are erroneous. And finally, he failed to respond to his counsel's request to execute a voluntary dismissal of his claims. Given his abandonment of this litigation coupled with the fact evidence he has no recoverable damages, dismissal of Plaintiff Cole is appropriate.

---

[3] A fairness hearing is unnecessary given Plaintiffs' virtual unanimous agreement with the settlement.

11

WHEREFORE, the Parties respectfully request that the Court issue an Order, consistent with its Suggestion of Disposition, that: (1) approves the Settlement Agreement (ECF No. 78) as fair, reasonable and adequate, including payments of (a) the Net Settlement Amount of $495,500, (*id.* §3.2.1.3), (b) service awards totaling $16,000, (*id.* §3.2.1.2), (c) the payment of attorneys' fees totaling $302,193.81 and costs totaling $11,306.19, (*id.* §3.2.1.1); (2) requires Defendants to make all payments under the Settlement Agreement within ten (10) business days from the date of the final order; (3) dismisses opt-in Plaintiff Cole, who has zero damages, without prejudice for reasons detailed above; and (4) dismisses this case with prejudice. A proposed order is submitted herewith at Ex. H.

On this 10th day of August, 2020.

Respectfully submitted,

| | |
|---|---|
| /s/ Thomas R. Bundy, III | s/Tracy L. Eggleston |
| Leslie J. Bryan | Tracy L. Eggleston, NC Bar # 18471 |
| LAWRENCE & BUNDY LLC | COZEN O'CONNOR |
| 1180 West Peachtree Street, N.W., | 301 S. College Street, Suite 2100 |
| Suite 1650, | Charlotte, NC 28202 |
| Atlanta, Georgia 30309 | Telephone: 704-376-3400 |
| (404) 400-3350 | Facsimile: 704-334-3351 |
| leslie.bryan@lawrencebundy.com | E-mail: TEggleston@cozen.com |
| | |
| Thomas R. Bundy, III | Jennifer T. Williams, FL Bar #174203 |
| LAWRENCE & BUNDY LLC | Susan N. Eisenberg, FL Bar #600393 |
| 8115 Maple Lawn Blvd., | COZEN O'CONNOR |
| Suite 350 | 200 South Biscayne Blvd., Suite 3000 |

Fulton, Maryland 20759
(240) 786-4998
thomas.bundy@lawrencebundy.com

*Attorneys for Plaintiffs*

Miami, FL 33131
Telephone: 305-704-5944
Facsimile: 786-220-0207
jtwilliams@cozen.com
seisenberg@cozen.com

*Attorneys for Defendant*